Les ASPIN, Appellant,
William B. Broydrick et al.

v.

DEPARTMENT OF DEFENSE, Melvin
R. Laird, Secretary of Defense, et al.

No. 72–2147.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 24, 1973.

Decided Nov. 26, 1973.

Benny L. Kass, Washington, D. C., for appellants.

David G. Larimer, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Michael A. Katz, Asst. U. S. Attys., were on the brief, for appellees.

Before TAMM, MacKINNON and ROBB, Circuit Judges.

TAMM, Circuit Judge:

Honorable Les Aspin [1] appeals from an order of the United States District Court for the District of Columbia, granting appellees' motion for summary judgment in a suit brought pursuant to § 552 of the Administrative Procedure Act, 5 U.S.C. § 552(a)(3) (1970).[2] Appellant Aspin asks that appellee release a document entitled "Department of the Army Review of the Preliminary Investigations into the My Lai Incident." This document is commonly known as the "Peers Commission Report" because it was written by Lieutenant General William R. Peers, U.S.A. We will follow this practice and refer herein to the "Peers Commission Report." The trial

1. Appellant Aspin is a member of the House of Representatives.

2. This section of the Administrative Procedure Act is well known as the Freedom of Information Act [hereinafter "FOIA"]. FOIA § 552(a)(3) provides:

Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person.

court held that the entire Peers Commission Report was exempt from FOIA disclosure because: (1) it was an investigatory file compiled for law enforcement purposes, thus exempt under 5 U.S.C. § 552(b)(7) (1970);[3] and (2) it was an intra-agency memorandum within the exemption from disclosure created by 5 U.S.C. § 552(b)(5) (1970).[4] For the reasons stated below, we affirm.

## I. The Facts

In 1969 Mr. Ronald Ridenhour, a former Army enlisted man, wrote to the Secretary of Defense and others inquiring into alleged atrocities committed by elements of the 23rd Army Division during the period 16–19 March 1968. On November 26, 1969, as a result of Mr. Ridenhour's communication, Stanley R. Resor, then Secretary of the Army, and General William C. Westmoreland, then United States Army Chief of Staff, directed Lieutenant General William R. Peers to begin an investigation to determine:

> the nature and the scope of the original U.S. Army investigation(s) of the alleged My Lai (4) incident which occurred 16 March 1968 in Quang Ngai Province, Republic of Vietnam. Your investigation will include a determination of the adequacy of the investigation(s) or inquiries on this subject, their subsequent reviews and reports within the chain of command, and possible suppression or withholding of information by persons involved in the incident.[5]

Affidavits submitted to the trial court reveal that the focus of the investigation was to be "primarily directed toward discovering and toward obtaining evidence of possible offenses under the Uniform Code of Military Justice . . . with a view toward prosecution if warranted."[6] Pursuant to this directive, General Peers, conducted an extensive investigation during the period from December 1969 to March 1970. The Commission interrogated many witnesses and assembled documentary evidence.[7] While the inquiry was primarily concerned with the depth and adequacy of the investigation of the My Lai incident conducted by officers of the 23rd Division, it was also necessary to investigate the alleged criminal conduct occurring during the My Lai operation itself.[8]

The Peers Commission Report, here sought by appellant, is the end product of these investigations. The report, submitted March 14, 1970, consists of forty-two bound books which are arranged into four volumes. Volume I, comprising twelve chapters and three annexes, contains the actual Report of Investigation. Volume II consists of thirty-three books of verbatim transcripts of witnesses' testimony. Volume III is comprised of seven books of documentary evidence (*e.g.* reports, maps, photographs etc.). Volume IV contains statements received by Army criminal investigators as part of the Peers Commission investigation or other criminal investigations.[9]

---

3. § 552(b)(7) provides in pertinent part:
 (b) This section does not apply to matters that are—
 * * * * *
 (7) investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency;

4. § 552(b)(5) provides in pertinent part:
 (b) This section does not apply to matters that are—
 * * * * *
 (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

5. Peers Commission Report, Vol. I, ch. 1.

6. Affidavit of General William C. Westmoreland, ¶ 5, Brief for Appellee, Appendix at 29; Affidavit of Robert W. Berry, General Counsel, Department of the Army, ¶ 6, Brief of Appellee, Appendix at 31.

7. Peers Commission Report, Vol. I, ch. 1.

8. Affidavit of General William C. Westmoreland, ¶¶ 3, 4, Brief for Appellee, Appendix at 28–29.

9. Affidavit of Mr. Bland West, Deputy General Counsel of the Army, ¶¶ 5–9, Brief of Appellee, Appendix at 24–26.

We note that certain portions of the Report bear the security classification "Confidential" or "Secret." [10] They were so classified by General Peers pursuant to authority delegated to him under Executive Order No. 10501, 3 C.F.R. 280 (January 1, 1970), as amended.[11] Certain portions of the Peers Commission Report were released to the public in March 1970,[12] and are contained in the record before us. The entire Peers Commission Report was given to the Armed Services Committees of both houses of Congress.

The Army, relying upon evidence compiled by General Peers and contained in his report, brought charges against fifteen officers for violations of the Uniform Code of Military Justice.[13] One of these prosecutions, that of First Lieutenant William L. Calley, culminated in a conviction of murder. Lieutenant Calley's appeal is now pending before the Court of Military Appeals.

Appellant, on February 18, 1972, wrote to then Secretary of Defense Melvin Laird, requesting public release of the entire report pursuant to FOIA. On March 1, 1972, Mr. Robert W. Berry, General Counsel of the Army, replied stating that it was the opinion of the Army that release to the public would not be possible at that time. Appellant then commenced this action, as a private citizen,[14] for public release of the entire Peers Commission Report.

## II. The Trial Court Ruling

The trial court, in granting appellees' motion for summary judgment, found that "[t]he documents sought are investigatory files compiled for law enforcement purposes and are exempt from disclosure because of specific exemptions provided in the Freedom of Information Act. 5 U.S.C. § 552(b)(7)." [15] In so holding the court stated that the proper test for determining whether the investigatory files exemption of § 552(b)(7) applies is "whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." [16] An examination of the Berry, Westmoreland and Ryker affidavits was found persuasive of the fact that the report "figured prominently in the initiation of subsequent court-martial proceedings." [17]

The trial court also found that Volume I of the Peers Commission Report enjoyed additional exemption from disclosure as an intra-agency memorandum within the meaning of 5 U.S.C. § 552(b)(5). Volume I was held to satisfy § 552(b)(5) because it was made up "principally of internal working papers in which opinions are expressed and policies formulated and recommended." [18] Having found that Volume I was so exempt, the trial court held that because it viewed all other volumes as "appendices to Volume I," the remaining material would "share the same protection accorded [Volume I]." [19]

10. The classified material includes all of Volume I not released to the public (Confidential) ; Vol. II, books 31 and 32 (Confidential) ; Vol. II, book 33 (Secret) ; and certain pages of Vols. III and IV. *Id.* ¶¶ 7–10.

11. *Id.* ¶ 11. Executive Order No. 10501, as amended, is now superceded by Executive Order No. 11652, 37 Fed.Reg. 5209 (effective June 1, 1972).

12. The material released consists of the bulk of chapters 1, 3, 4, and 9 of Vol. I. Chapter 1 summarizes the nature and purposes of the investigation ; chapters 3 and 4 contain summaries of the evidence compiled ; chapter 9 is a discussion of the applicable official directives concerning treatment of

non-combatants. Peers Commission Report, Vol. I, chs. 1, 3, 4, 9.

13. Affidavit of Lieutenant Colonel George C. Ryker ¶¶ 2–4, Brief for Appellee, Appendix at 35.

14. Appellant is a member of the House Armed Services Committee, and received the entire report in that capacity.

15. Aspin v. Department of Defense, 348 F. Supp. 1081, 1082 (D.D.C.1972).

16. *Id.*

17. *Id.*

18. *Id.*

19. *Id.*

### III.

■■ Appellant urges that the trial court erred in its holding that the Peers Commission Report constituted "investigatory files compiled for law enforcement purposes" within the meaning of FOIA § 552(b)(7). Two distinct errors are asserted: (1) that the report is not an "investigatory file"; and (2) that even if it were once an "investigatory file", the report is no longer entitled to § 7 exemption because no courts-martial are to be held in the future; *i.e.* that a § 7 exemption cannot, apparently as a matter of law, continue as to documents which were involved in prior law enforcement proceedings.

In support of the first alleged error, appellant directs this court's attention to the letter which Lieutenant General Peers received from his superiors directing him to commence an investigation. There it was said:

> Your investigation will be concerned with the time period beginning March 1968 until Mr. Ronald L. Ridenhour [plaintiff in this action] sent his letter, dated 29 March 1969 to the Secretary of Defense and others. *The scope of your investigation does not include, nor will it interfere with, ongoing criminal investigations in progress.*[20]

Further, appellant points to language in the Affidavit of General Westmoreland:

> 4. General Peers subsequently expanded the scope of his inquiry to include allegations of criminal offenses at My Lai (4). *Notwithstanding such expanded scope, however, the inquiry remained independent of investigative efforts of the CID.*[21]

Relying upon the emphasized text *supra*, appellant argues in conclusory fashion that:

It would appear that this language is quite clear on its face. General Peers was not directed to make an investigation for law enforcement purposes; rather, he was instructed to investigate the investigation, so as to satisfy the Army, the Congress, and indeed the public that the Army was able to keep its own house in order.[22]

It is our opinion that appellant's attempt to characterize the Peers Commission activities as an "investigat[ion] of the investigation" is but a frivolous semantic device. The trial court's duty in FOIA cases is clear. It must examine the total record to determine "whether the files sought . . . relate to anything that can fairly be characterized as an enforcement proceeding." *Bristol-Myers Co. v. FTC,* 138 U.S.App.D.C. 22, 424 F.2d 935, 939, cert. denied, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970). In the recent case of *Weisberg v. United States Department of Justice,* 160 U.S.App.D.C. ——, 489 F.2d 1195 (1973) this court, sitting *en banc*, held that a trial court's determination must focus on "how and under what circumstances the files were compiled . . . ." *Weisberg, supra,* at ——, 489 F.2d at 1202.

Our own careful review of the entire record, Vaughn v. Rosen, 157 U.S.App. D.C. 340, at 345, 484 F.2d 820, at 825 convinces us that the trial court was correct in holding that the Peers Commission Report met the criteria of the § 7 exemption. The detailed affidavits submitted amply demonstrate the stated purposes of the investigation, the manner in which it was conducted, and its results.

The purpose of the investigation appears clear: to determine the adequacy of the United States Army's investigation of the My Lai incident to ascertain

---

20. Letter from General Westmoreland and Secretary Resor to Lieutenant General Peers, 26 November 1969; Plaintiff's Exhibit F to Plaintiff's Motion for Summary Judgment. (Emphasis added by appellant.)

21. Affidavit of General William Westmoreland, ¶ 4, Brief for Appellee, Appendix at 29. (Emphasis added by appellant.)

22. Brief of Appellant at 4–5.

whether any officers involved suppressed or withheld information.[23] General Westmoreland stated that General Peers was to conduct an inquiry:

primarily directed toward discovering and toward obtaining evidence of possible offenses under the Uniform Code of Military Justice . . . including but not limited to violations of general orders and/or dereliction of duty (10 U.S.C. § 892), with a view toward prosecution if warranted.[24]

We view the language cited by appellant as meaning simply that General Peers' investigation was to be an independent one; he was not to interfere with the activities of the Criminal Investigation Division [CID] which was investigating the *activities at My Lai* during the period in question. General Peers was to focus on the *later investigation* of the incident by the officers responsible for such an inquiry.

The manner in which General Peers conducted his investigation clearly reveals that he perceived that his investigation was to be the ultimate basis for courts-martial for violations of military law. Affidavits reveal that each witness who appeared was warned of his constitutional right to remain silent. Further, persons suspected of violations received more extensive warnings as to the nature of the charges against them, their right to remain silent, and their right to counsel.[25] Finally, and perhaps most important, the Peers Commission Report was the direct evidentiary basis for the courts-martial of fifteen individuals.[26]

Therefore, to reiterate, we find after examination of the record, that the trial court was correct in concluding that the entire Peers Commission Report was produced as an "investigatory file compiled for law enforcement purposes." Thus it is entitled to exemption under FOIA § 552(b)(7).

■ Appellant's second contention raises the question of whether the exemption from disclosure of matter contained in an "investigatory file" which was compiled and actually utilized by an agency in law enforcement proceedings applies after these enforcement proceedings have terminated.[27] Appellants attempt to rely upon the decision of this court in Bristol-Myers v. FTC, 138 U.S.App.D.C. 22, 424 F.2d 935, cert. denied, 400 U.S. 824, 91 S.Ct. 46, 27 L. Ed.2d 52 (1970). Appellant cites the following language:

[T]he agency cannot, consistent with the board disclosure mandate of the Act, protect all its files with the label "investigatory" and a suggestion that enforcement proceedings may be launched at some unspecified future date. Thus the District Court must determine whether *the prospect of enforcement proceedings is concrete enough* to bring into operation the exemption for investigatory files, and if so whether the particular documents sought by the company are nevertheless discoverable.

424 F.2d at 939–940 (emphasis added). From this language appellant argues that the "prospect of enforcement proceedings" could not be "concrete

---

23. Peers Commission Report, Vol. I, ch. 1, at 6.

24. Affidavit of General William Westmoreland, ¶ 5, Brief for Appellee, Appendix at 29.

25. Affidavit of Mr. Bland West, ¶ 7(b), Brief of Appellee, Appendix at 26.

26. Affidavit of Mr. Robert W. Berry, ¶ 6, Brief of Appellee, Appendix at 31; Affidavit of Lieutenant Colonel George C. Ryker, ¶¶ 2–4, Brief of Appellee, Appendix at 34.

27. We note the Government's contention that this is not a case where all enforcement proceedings have terminated because one prosecution, *i. e.* that of Lieutenant William Calley, is still in appeal. Brief of Appellee at 12, n. 17. It is not clear from the record, however, to what extent Lieutenant Calley's court-martial for specific wrongful conduct at the scene (rather than subsequent failure to investigate) was based on the Peers Commission Report. We therefore do not base our holding today on the pendency of Lieutenant Calley's appeal.

enough" because the courts-martial have already been held. We find this reliance misplaced. In *Bristol-Myers* the Federal Trade Commission had made a conscious decision *not* to maintain any enforcement proceeding at least two years prior to suit to compel disclosure of the documents. 424 F.2d at 939. The question in that case was, therefore, whether the bare assertion by an agency that files were compiled for law enforcement purposes *when no enforcement proceedings were in fact ever prosecuted,* would be enough to preclude disclosure. The court held that such an assertion was not sufficient, and remanded for further consideration in the trial court.[28] 424 F.2d at 939.

To prevent the unauthorized use of a § 7 exemption by agencies as a shield against disclosure, there must be some method of assuring that the exemption is being properly invoked. Here 15 individuals were in fact already court-martialed on the basis of the Peers Commission Report, a showing which goes beyond the bare allegation that proceedings were merely contemplated at the time the files were compiled. Where, as here, enforcement proceedings have in fact resulted, there can be little doubt that files were compiled for law enforcement purposes. Frankel v. SEC, 460 F.2d 813 (2d Cir.), cert. denied, 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972) is more closely in point. In *Frankel,* the Securities and Exchange Commission commenced an investigation to ascertain whether a corporation had violated § 10(b) of the Securities and Exchange Act of 1934. The Commission compiled a substantial file, and on the basis of materials contained in this file, commenced a civil action against the corporation and its president. These proceedings culminated in a consent decree. Corporate shareholders then commenced a FOIA suit demanding release of the Commission's investigatory file. The trial court held since the investigation and prosecution terminated on the date of the consent decree, the § 7 exemption also terminated at that time. Frankel v. SEC, 336 F.Supp. 675, 678 (S.D.N.Y. 1971). The Court of Appeals for the Second Circuit reversed stating clearly "the § 552(b)(7) exemption from disclosure applies even after an investigation and an enforcement proceeding have been terminated . . . ." 460 F.2d at 817.

The *Frankel* court's analysis of the purposes behind the § 7 exemption was well reasoned and persuasive. The court concluded that legislative history revealed that Congress evidenced a twofold purpose in enacting the § 7 exemption for investigatory files.

 to prevent the premature disclosure of the results of an investigation so that the Government can present its strongest case in court, and

 to keep confidential the procedures by which the agency conducted its investigation and by which it has obtained information

460 F.2d at 817. Our reading of the pertinent legislative history, reproduced in the margin,[29] convinces us that the

---

28. The court also noted that Bristol-Myers was demanding the production of the "studies and reports" which the Federal Trade Commission had cited as the basis for a proposed rule. If the investigative files withheld by the Commission were among the documents thus publicly cited it could be argued that they had lost their protected status.

29. The Senate Report, discussing FOIA's purpose, stated:

It is also necessary for the very operation of our Government to allow it to keep confidential certain material, such as the investigatory files of the Federal Bureau of Investigation. S.Rep.No.813, 89th Cong., 1st Sess. 3 (1965).

In discussing the investigatory file exemption, the House Report stated:

This exemption covers investigatory files related to enforcement of all kinds of laws, labor and securities laws as well as criminal laws. This would include files prepared in connection with related Government litigation and adjudicative proceedings. S. 1160 is not intended to give a private party indirectly any earlier or greater access to investigatory files than

reasoning in *Frankel* is correct. Appellants cite no legislative history which would compel a contrary view. It is clear that if investigatory files were made public subsequent to the termination of enforcement proceedings, the ability of any investigatory body to conduct future investigations would be seriously impaired. Few persons would respond candidly to investigators if they feared that their remarks would become public record after the proceedings. Further, the investigative techniques of the investigating body would be disclosed to the general public.

The Second Circuit elaborated on the undesirability of post-proceeding disclosure, saying:

> If an agency's investigatory files were obtainable without limitation after the investigation was concluded, future law enforcement efforts by the agency could be seriously hindered. The agency's investigatory techniques and procedures would be revealed. The names of people who volunteered the information that had prompted the investigation initially or who contributed information during the course of the investigation would be disclosed. The possibility of such disclosure would tend severely to limit the agencies' possibilities for investigation and enforcement of the law since these agencies rely, to a large extent, on voluntary cooperation and on information from informants.

460 F.2d at 817–818. *See also,* Evans v. Department of Transportation, 446 F.2d 821, 824 (5th Cir. 1971), cert. denied, 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972); Clement Brothers Co. v. NLRB, 282 F.Supp. 540, 542 (N.D.Ga.1968), aff'd, 407 F.2d 1027 (5th Cir. 1969).

We note also that the recent *en banc* decision of this court in Weisberg v. U. S. Department of Justice, *supra,* is consistent with our decision in this case. While the court in *Weisberg* expressly limited the question there to the application of the § 7 exemption to "Federal Bureau of Investigation files" (slip op. at 8), the point remains that a § 7 exemption was there upheld as applied to files almost ten years old where no prosecution was ever conducted. This squarely rebuts appellant's broad argument that when there is no longer any prospect for future enforcement proceedings (necessitated in *Weisberg* by the death of the only suspect) the § 7 exemption from disclosure must terminate as well.

We therefore hold that an exemption under § 552(b)(7), as investigatory files compiled for law enforcement purposes, remains available after the termination of investigation and enforcement proceedings. The entire Peers Commission Report, being a report entitled to protection under § 552(b)(7), continues to be protected under that exemption.

Since we have concluded that the entire Peers Commission Report is exempt from disclosure under FOIA § 522 (b)(7), we find it unnecessary to consider, nor do we express any opinion on, whether the report is entitled to additional exemption as an intra-agency memorandum under § 552(b)(5). Likewise, we have no need to consider a third exemption here urged by appellee [30] but not ruled upon by the trial court, that portions of the report classified "Confidential" and "Secret" are exempt under § 552(b)(1).[31] *See* Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L. Ed.2d 119 (1973).

### IV.

For the reasons stated *supra,* the decision of the trial court is

Affirmed.

he would have directly in such litigation or proceedings. H.R.Rep.No.1497, 89th Cong., 2nd Sess. 11 (1966).

30. Brief for Appellee at 9, n. 13.

31. FOIA § 552(b)(1) provides:
(b) This section does not apply to matters that are—
(1) specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy;