**MARATHON LeTOURNEAU COMPANY, MARINE DIVISION, Plaintiff,**

v.

**NATIONAL LABOR RELATIONS BOARD, Defendant.**

**Civ. A. No. W76–15(N).**

United States District Court, S. D. Mississippi, W. D.

June 9, 1976.

Louis A. Fuselier, Armin J. Moeller, Jr., Jackson, Miss., for plaintiff.

Lee J. Romero, Jr., I. Harold Koretzky, N.L.R.B., New Orleans, La., for defendant.

## OPINION

NIXON, District Judge.

This is a suit brought under the Freedom of Information Act (FOIA), 5 U.S.C.A. § 552, by Marathon LeTourneau Company, Marine Division (Marathon), to compel the National Labor Relations Board (N.L.R.B.)

to disclose certain information and to enjoin the N.L.R.B. from conducting certain administrative hearings until disclosure is made. The case is before the Court at this time on both parties' Motions for Summary Judgment.

### FINDINGS OF FACT

In response to unfair labor practice charges filed against Marathon by the United Steelworkers of America, AFL–CIO, the N.L.R.B. conducted investigations and issued formal complaints alleging that Marathon has engaged in and is continuing to engage in conduct violating Section 8(a)(1), (3), and (4) of the National Labor Relations Act, 29 U.S.C.A. § 151, *et seq.*

On February 5, 1976, Marathon requested, pursuant to the FOIA and the N.L.R.B.'s rules and regulations, that the following information be made available to it:

1. All affidavits, statements or memoranda of fact contained in the above captioned case file;

2. All documentary exhibits, data and information contained in the above captioned case file;

3. Any such statements or documentary exhibits which may be submitted subsequently.

On February 18 the Regional Director of the N.L.R.B. denied the majority of Marathon's requests on the grounds that the information was privileged from disclosure by Exemptions 7(A), 7(C), and 7(D) of the FOIA. He did agree that,

The formal documents constituting the record in the above-captioned case are available to you . . . . In addition, all correspondence and documents sent or received by the Regional Office addressed to or signed by yourself or your client, or of which you have received a copy, will be made available at the New Orleans Regional Office. Further, we will make available the following: (1) a special edition of the United Steelworkers *Steel Labor* newspaper dated July 1975 and (2) documents presented by you or your client during the investigation of this case, including letters from the Union to

your client concerning the committee members, transfer cards of employees, stop card and unemployment compensation forms related to Aaron Gunter, telegrams and a letter from Mr. Wilson (president of the Company) to the Union dated January 17, 1975.

The following day Marathon filed an appeal with the General Counsel of the N.L.R.B. which he denied on March 18th contending that the information was privileged from disclosure by Exemptions 5, 7(A), 7(C), and 7(D) of the FOIA.

On March 24, 1976, Marathon filed its Complaint herein, pursuant to Section (a)(4)(B) of the FOIA, 5 U.S.C.A. § 552(a)(4)(B), claiming that the information sought is required to be disclosed by Section (a)(3) of the FOIA, 5 U.S.C.A. § 552(a)(3), that the failure to furnish the information is "arbitrary and capricious," and that Marathon will "suffer irreparable injury for which it has no adequate remedy at law" if it does not receive the requested information to prepare its defense. The Complaint requests this Court to decree (1) that the information sought by Marathon constitutes public information within the meaning of the FOIA and that it is entitled to inspect and copy such information; (2) that the N.L.R.B. be enjoined from withholding this information and be required to produce it for inspection and copying; (3) that the N.L.R.B. be preliminarily enjoined from conducting its administrative hearing until the FOIA request is resolved; (4) that the N.L.R.B. be permanently enjoined from conducting its administrative hearing until a reasonable time after the requested information is provided; and (5) that Marathon be awarded costs and attorneys' fees incurred in this action.

Pursuant to Section (a)(4)(D), 5 U.S.C.A. § 552(a)(4)(D), this Court expedited discovery in this action and set the matter for trial at the earliest practicable date, April 27, 1976, at which time the parties were permitted to introduce evidence and make oral arguments in support of their respective Motions for Summary Judgment. At the close of the hearing the Court ordered

the N.L.R.B. to submit by April 30th for an *in camera* inspection the information requested by Marathon, which Order has been fully complied with.

## CONCLUSIONS OF LAW

The FOIA was enacted in 1966 as a revision of Section 3 of the Administrative Procedure Act. As amended in 1967 it required governmental agencies to make available to the public information in enumerated categories covering virtually all information possessed by the agencies with the exception of certain specific exemptions. *Renegotiation Board v. Bannercraft Company,* 415 U.S. 1, 12, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974). Governmental agencies almost universally expressed their opposition to the Freedom of Information Act when it was proposed, and after its passage they administered the Act in such a way that many of its goals were thwarted. *See,* H.R.Rep.No.92–1419, 92d Cong., 2d Sess. 20–28 (1972). Thus, in 1974 Congress amended the Act "to strengthen the procedural aspects of the Freedom of Information Act by several amendments which clarify certain provisions of the Act, improve its administration, and expedite the handling of requests for information from Federal agencies in order to contribute to the fuller and faster release of information, which is the basic objective of the Act." H.R.Rep.No.93–876, 93d Cong., 2d Sess. (1974), U.S.Code Cong. & Admin.News 1974, p. 6267. Our task in resolving the issues presented in this case consists primarily of divining the Congressional intent expressed in these 1974 amendments.

As amended, the FOIA requires, in pertinent part that

each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

5 U.S.C.A. § 552(a)(3).

Section (a)(4)(B) vests jurisdiction in the United States District Courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld . . . .. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld . . ., and the burden is on the agency to sustain its action." 5 U.S.C.A. § 552(a)(4)(B).

■ This court has jurisdiction of the parties and of the subject matter and Marathon has standing as a "person" under Section (a)(3) of the FOIA to maintain this action.

In refusing to disclose the requested information, the N.L.R.B. does not contend that Marathon's request fails to reasonably describe the records sought or fails to comply with published rules relating to the disclosure of such information. Rather, the agency contends that one or more of the following exemptions is applicable to the material requested:

(b) This section does not apply to matters that are—

. . . . .

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

. . . . .

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, . . . (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source . . . ';

. . . . .

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

5 U.S.C.A. § 552(b).

■ Before considering the specific exemptions raised by the N.L.R.B., we con-

sider a number of preliminary issues. First, we note that it is immaterial here that Marathon claims a specific need for the documents in question in order to prepare its defense to the unfair labor practice charges pending against it. The FOIA was not enacted as a discovery device. "Discovery for litigation purposes is not an expressly indicated purpose of the Act." *Renegotiation Board v. Bannercraft Co., supra* at 24, 94 S.Ct. at 1040. As the Supreme Court stated in *N. L. R. B. v. Sears, Roebuck & Company,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975),

> Sears' rights under the Act are neither increased nor decreased by reason of the fact that it claims an interest in the Advice and Appeals Memoranda greater than that shared by the average member of the public. The Act is fundamentally designed to inform the public about agency action and not to benefit private litigants. Accordingly, we will not refer again to Sears' underlying unfair labor practice charge.

421 U.S. at 143 n. 10, 95 S.Ct. at 1513 (citations omitted). The question thus becomes whether Marathon, as an "average member of the public", is entitled to the information it seeks from the N.L.R.B. in this case. *Atlas Industries v. N. L. R. B.,* 91 L.R.R.M. 2676 (N.D.Ohio 1976).

Secondly, we recognize that this Court has previously authored an opinion in a Freedom of Information suit whose issues were somewhat similar to the ones which we consider herein. *Kaminer v. N. L. R. B.,* 90 L.R.R.M. 2269, 78 CCH Lab.Cas. ¶ 11,272 (S.D.Miss.1975). *Kaminer* was one of the first reported cases construing the 1974 Amendments to the Freedom of Information Act, and as such was decided without the guidance of many of the cases and secondary sources which the Court finds extremely helpful in deciding the instant case. Also, as we will point out later in this Opinion, the facts of *Kaminer* differed in a number of important respects from the instant case. Thus, while our decision here is entirely consistent with *Kaminer,* in reaching this decision we have not considered ourselves bound by *Kaminer.*

The N.L.R.B. attaches great weight to the recent Second Circuit Court of Appeals opinion in *Title Guarantee Co. v. N. L. R. B.,* 534 F.2d 484 (2nd Cir. 1976). Marathon just as strenuously disputes its precedential value to this Court, contending that the Second Circuit explicitly relied upon its earlier decision in *N. L. R. B. v. Interboro Contractors, Inc.,* 432 F.2d 854 (2nd Cir. 1970), *cert. den.,* 402 U.S. 915, 91 S.Ct. 1375, 28 L.Ed.2d 661 (1971), the rationale of which was expressly rejected by the Fifth Circuit in *N. L. R. B. v. Rex Disposables, Inc.,* 494 F.2d 588, 592 (5th Cir. 1974). We agree with Marathon that certain portions of *Title Guarantee* adopt the *Interboro* rationale, and insofar as this is true we find that *Title Guarantee* lacks precedential value for this Court. Other portions of *Title Guarantee,* however, are decided independently of the *Interboro* rationale and to that extent we find *Title Guarantee* useful and instructive in deciding the issues presented here.

We also point out that in this Opinion we reach Conclusions of Law with respect to each exemption asserted by the N.L.R.B., although at first blush it might appear unnecessary to do so. We do this for two reasons. First, Section (b) of the FOIA requires that any reasonably segregable portion of a record be disclosed after deletion of exempt portions. Different portions of a record may be exempt from disclosure under different exemptions; it may be necessary to consider all exemptions in order to assure that we reach all material which the agency is entitled to withhold from disclosure. Secondly, while we do not consider Marathon's specific needs for this material in reaching our decision, we must note that the material which it seeks loses much of its value after the administrative hearing on the unfair labor practice charges filed against it. By expressing our Conclusions of Law with respect to each of the asserted exemptions, we attempt to assure that the Appellate Court or Courts can fully decide this matter in a timely manner in the event of an appeal from this decision.

██ Finally, we recognize, as Marathon argues, that proper statutory construction requires that the clear and unambiguous terms of a statute must first be examined and given their ordinary meaning, and then, only if there is an ambiguity, should the statute's legislative history be consulted. *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); *F. T. C. v. Manager, Retail Credit Co.,* 169 U.S.App.D.C. 271, 515 F.2d 988 (1975). The wide disparity among the reported opinions dealing with the 1974 amendments to the FOIA shows conclusively, however, that the terms of this statute are not "clear and unambiguous", and we therefore do not hesitate to turn to legislative history where necessary. *Compare, e. g., Vegas Village Shopping Corp. v. N. L. R. B.,* No. CV 76–916–RJK (C.D.Cal., Apr. 26, 1976); *Capital Cities v. N. L. R. B.,* 409 F.Supp. 971, 91 L.R.R.M. 2565 (N.D.Cal.1976); *Jamco International v. N. L. R. B.,* 91 L.R.R.M. 2446 (N.D.Okla.1976); *Harvey's Wagon Wheel v. N. L. R. B.,* 91 L.R.R.M. 2410, 78 CCH Lab.Cas. ¶ 11,268 (N.D.Cal.1976) with *McDonnell Douglas Corp. v. N. L. R. B.,* 92 L.R.R.M. 2072 (C.D.Cal.1976); *Maremont Corp. v. N. L. R. B.,* 91 L.R.R.M. 2804 (W.D.Okla.1976).

We have inspected the requested documents *in camera,* as is permitted by the FOIA, 5 U.S.C.A. § 552(a)(4)(B), and suggested by the Fifth Circuit in *Kent Corp. v. N. L. R. B.,* 530 F.2d 612, 624 at n. 30 (5th Cir. 1976). The documents requested are contained in two separate files, each of which contains five sections: (I) Affidavits and Statements; (II) Board Agent's File Notes; (III) Board Agent's Investigative Interview Notes; (IV) Final Investigative Report and Recommendations; and (V) Company Exhibits. In response to Marathon's FOIA request, the N.L.R.B. has agreed to give it those documents, and only those documents, which are contained in Section V (Company Exhibits). Based upon our examination of the remainder of the documents in these files and upon the applicable law, we now proceed to consider and decide the merit of each of the exemptions asserted by the N.L.R.B.

██ Exemption 5, 5 U.S.C.A. § 552(b)(5), which was unchanged by the 1974 amendments, exempts from disclosure "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency". Exemption 5 embodies at least two common-law privileges for governmental memoranda, the executive privilege, protecting predecisional communications reflecting the agency's deliberative process, and the attorney work product privilege announced in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *N. L. R. B. v. Sears, Roebuck & Co., supra; Kent Corp. v. N. L. R. B., supra* at 618; *Electri-Flex Co. v. N. L. R. B.,* 412 F.Supp. 698 (N.D.Ill.,1976). This exemption was not intended, however, to protect purely factual affidavits and statements which are in no way deliberative or advisory. *See e. g., N. L. R. B. v. Sears, Roebuck & Co., supra,* 421 U.S. at 150, 95 S.Ct. 1504; *E. P. A. v. Mink,* 410 U.S. 73, 86–91, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Soucie v. David,* 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971); *Electri-Flex Co. v. N. L. R. B., supra. See also, Kent Corp. v. N. L. R. B., supra* at 624.

██ Sections II, III and IV of the subject files consists solely of file notes, investigative notes, investigative reports, and recommendations prepared by the N.L.R.B.'s agents and attorneys which are neither primary information nor final opinions. Rather, they reflect the deliberative processes of the N.L.R.B. and its agents in investigating, drafting, and filing charges against Marathon. They are precisely the sort of predecisional documents that *Sears* identifies as intra-agency memoranda mentioned in the FOIA, and are protected by Exemption 5. *Kent Corp. v. N. L. R. B., supra; Wu v. National Endowment for Humanities,* 460 F.2d 1030 (5th Cir. 1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1352, 35 L.Ed.2d 586 (1973). Our careful *in camera* inspection of these documents reveals that there is no reasonably segregable portion of these records which remains after deletion of those portions protected by Exemption 5.

■ We reach a different conclusion, however, with respect to the affidavits and statements contained in Section I of the files. This section contains purely factual, primary information. We perceive no congressional intent to protect any such material under the privileges embodied in Exemption 5 of the FOIA.

We turn now to Exemption 7, which protects, in pertinent part: "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, . . . (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source . . . ." Exemption 7 was totally revised by the 1974 amendments, and it is this exemption which has created the greatest problems of interpretation in the reported decisions. Accordingly, we deem it appropriate to deal extensively with the background and legislative history of this exemption.

As originally enacted, Exemption 7, 5 U.S.C.A. § 552(b)(7) (1967), protected from disclosure

> investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency.

The legislative history of the original Exemption 7 reveals that its purpose was twofold, (1) to prevent premature disclosure of the results of the government's investigation so that it could present its strongest case in court, and (2) to protect the government's sources of information so that persons having information would feel free to volunteer it without fear of reprisal. *See Wellman Industries, Inc. v. N. L. R. B.,* 490 F.2d 427 (4th Cir.), *cert. denied,* 419 U.S. 834, 95 S.Ct. 61, 42 L.Ed.2d 61 (1974); *Frankel v. Securities & Exchange Commission,* 460 F.2d 813 (2nd Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972); H.R.Rep.No.1497, 89th Cong., 2d Sess. 11 (1966); S.Rep.No.813, 89th Cong., 1st Sess. (1965), U.S.Code Cong. & Admin. News 1966, p. 2418.

It has long been the policy of the N.L.R.B. not to allow pretrial discovery of statements made to it during the course of its investigations. *See, e. g., Vapor Blast Mfg. Co. v. Madden,* 280 F.2d 205 (7th Cir.), *cert. denied,* 364 U.S. 910, 81 S.Ct. 273, 5 L.Ed.2d 225 (1960). Shortly after enactment of the original version of the FOIA a number of employers attempted to use the statute to force the N.L.R.B. to disclose such statements, but these attempts were uniformly rejected. *Wellman Industries, Inc. v. N. L. R. B., supra; N. L. R. B. v. Clement Brothers Co.,* 407 F.2d 1027 (5th Cir. 1969).

In recent years, however, a series of court decisions, particularly in the District of Columbia Circuit, vastly expanded this interpretation of the original Exemption 7. These decisions woodenly and mechanically applied Exemption 7 to deny access to information contained in agency files simply because they were denominated investigatory files, and extended the exemption to include files on closed matters as well as those relating to matters which were not the subject of pending or contemplated agency proceedings. *See Center for National Policy Review v. Weinberger,* 163 U.S.App.D.C. 368, 502 F.2d 370 (1974); *Ditlow v. Brinegar,* 161 U.S.App.D.C. 154, 494 F.2d 1073, *cert. denied,* 419 U.S. 974, 95 S.Ct. 238, 42 L.Ed.2d 188 (1974); *Aspin v. Department of Defense,* 160 U.S.App.D.C. 231, 491 F.2d 24 (1973); *Weisberg v. Department of Justice,* 160 U.S.App.D.C. 71, 489 F.2d 1195 (1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974). The desire to reverse these holdings and the holding of the Supreme Court in *E. P. A. v. Mink, supra,* that the FOIA did not empower the district court to look behind an agency's assertion of executive privilege were the prime factors which motivated Congress to enact the 1974 amendments to the FOIA:

> Mr. Kennedy [to Senator Hart]. Does the Senator's amendment in effect override the court decisions in the court of appeals on the Weisberg against United States, Aspin against Department of Defense; Ditlow against Brinegar; and National Center against Weinberger?

As I understand it, the holdings in those particular cases are of the greatest concern to the Senator from Michigan. As I interpret it, the impact in effect of his amendment would be to override those particular decisions. Is that correct?

Mr. Hart. The Senator from [Massachusetts] is correct. That is its purpose. That was the purpose of Congress in 1966, we thought, when we enacted this. Until about 9 or 12 months ago, the courts consistently had approached it on a balancing basis, which is exactly what this amendment seeks to do.

120 Cong.Rec. S9336, as quoted in *Harvey's Wagon Wheel v. N. L. R. B., supra* at 2413.

Other portions of the Congressional debate on the 1974 amendments are enlightening. Senator Hart stated further:

My reading of the legislative history suggests that Congress intended that this seventh exemption was to prevent harm to the Government's case in court by not allowing an opposing litigant earlier or greater access to investigative files than he would otherwise have.

. . . . .

Then, as now, we recognized the need for law enforcement agencies to be able to keep their records and files confidential where a disclosure would interfere with any one of a number of specific interests, each of which is set forth in the amendment that a number of us are offering.

. . . . .

Our amendment is broadly written, and when any one of the reasons for nondisclosure is met, the material will be unavailable. But the material cannot be and ought not be exempt merely because it can be categorized as an investigatory file compiled for law enforcement purposes.

Let me clarify the instances in which nondisclosure would obtain: First, where the production of a record would interfere with enforcement procedures. This would apply whenever the Government's

case in court—a concrete prospective law enforcement proceeding—would be harmed by the premature release of evidence or information not in the possession of known or potential defendants. This would apply also where the agency could show that the disclosure of the information would substantially harm such proceedings by impeding any necessary investigation before the proceeding. In determining whether or not the information to be released will interfere with a law enforcement proceeding it is only relevant to make such determination in the context of the particular enforcement proceeding.

120 Cong.Rec. 9329–9330 (daily ed. May 30, 1974) (Remarks of Senator Hart), as quoted in *Capital Cities v. N. L. R. B., supra* at 975.

After the 1974 amendments were passed by Congress, President Ford vetoed them. Both Houses of Congress promptly and overwhelmingly overrode the President's veto, and certain significant Congressional debate in connection with these votes to override the veto is available to the Court through the *Freedom of Information Act and Amendments of 1974 (P.L. 93–502) Sourcebook: Legislative History, Text, and Other Documents (Joint Committee Print)*, Committee on Governmental Operations, United States House of Representatives, Subcommittee on Governmental Information and Individual Rights and Committee on the Judiciary, United States Senate, Subcommittee on Administrative Practice and Procedure (March, 1975) (hereinafter referred to as "Sourcebook").

In discussing the amendment to Exemption 7, Congressman Reid stated, "Rather than affording all law enforcement matters a blanket exemption, this bill requires that the Government specify some harm in order to claim the exemption." Sourcebook at 413. Of like tenor is Congressman Erlenborn's comment, "Lastly, on the question of opening up investigatory records, at the present time under the law all investigatory files are exempt, and we found that there have been abuses in this regard. Under the bill we would open up nonexempt records

that are within exempt files." Sourcebook at 420–21.

Significantly lacking in the Congressional debate is any indication that the Congress intended to override *Wellman Industries, Inc. v. N. L. R. B., supra,* at that time the leading and one of the more recent cases holding that affidavits obtained by an N.L. R.B. investigator in his inquiry into unfair labor practice charges were exempt under the former Exemption 7. Indeed, the above-quoted statement of Senator Hart, one of the sponsors of the amendments, appears to this Court to indicate specific Congressional approval of the *Wellman* holding: ·

> My reading of the legislative history suggests that Congress intended that this seventh exemption was to prevent harm to the Government's case in court by not allowing an opposing litigant earlier or greater access to investigative files than he would otherwise have.

 We believe that the Congressional purpose in enacting Exemption 7(A) of the FOIA in 1974 was to permit a law enforcement agency to withhold from disclosure information which would harm its case in court by allowing an opposing litigant earlier or greater access to investigative files than he would otherwise have, but only where there exists a concrete prospective law enforcement proceeding. Further, we believe that the amendment places the burden on an agency claiming a 7(A) exemption to prove to the Court by appropriate means, which may include *in camera* inspection, that the claim is well-founded.

Marathon would have us hold that Exemption 7(A) was intended to be read as a rejection of the *Wellman* holding. Only one statement in the entire legislative history of the amendments appears to this Court to support this interpretation. During the debate on the vote to override the Presidential veto of the amendments, Senator Ervin related the following,

> Mr. President, the executive agencies of the U.S. Government remind me of a young lawyer in Charlotte, N.C. Years

ago he brought suit for damages against Western Union Telegraph Co. Mr. C. W. Tillotson, a very eminent lawyer, represented the telegraph company, and he filed a motion to require the plaintiff to make his complaint more specific.

> The judge who had to pass on the motion happened to see this young lawyer and suggested to him that he go ahead and make his complaint more specific in the respects that had been asked for. The young lawyer told the judge he would not do it.

> He said:

> If Mr. Tillotson is going to want me to tell him what this lawsuit is all about he is just a damn fool.

> Every time the Congress of the American people or the American press seek information from the executive branch of Government they have an equivalent reply in most cases from the executive branch of the Government.

Sourcebook at 461. "Absent a clearer indication of contrary congressional intent, we are not prepared to hold that disclosure may be required under the FOIA in connection with an ongoing unfair labor practice enforcement proceeding." *Title Guarantee Co. v. N. L. R. B, supra* at 491; *accord, Goodfriend Western Corp. v. Fuchs,* 535 F.2d 145 (1st Cir. 1976); *Electri-Flex Co. v. N. L. R. B., supra. Contra, McDonnell Douglas Corp., v. N. L. R. B., supra; Maremont Corp. v. N. L. R. B., supra.*

 We believe that in the instant case, in the context of the particular pending unfair labor practice proceeding, the N.L. R.B. has met its burden of showing that its claim of exemption is valid under 7(A). We have read each of the affidavits and statements contained in Section I of the files submitted for *in camera* inspection. Although certain of the documents contain references to incidents which no longer form a basis for the presently pending charges against Marathon, they all relate to the general sequence of events which lead to the filing of the pending charges. None of the documents or any segregable portion

thereof could be disclosed at this time without substantial prejudice to the Government's case in the pending proceedings.

■ We also believe that the material contained in Sections II, III, and IV of the subject files fall within the four corners of Exemption 7(A), although we believe that Congress intended primarily to exempt these materials under Exemption 5. These notes, reports, and recommendations contain the details of the N.L.R.B.'s investigative techniques and its strategies, disclosure of which would certainly result in substantial harm to its pending case.

In reaching the above conclusion we express no opinion as to the basic necessity for or fairness of the N.L.R.B.'s denial of pre-trial discovery. As one court has stated:

> However, sympathetic as the Court may be to the claim that refusal of the NLRB to disclose witness statements results in "trial by ambush", and however disdainful the Court might be of the NLRB's policy of restricting discovery to the bare legal minimum, the wisdom of the NLRB's discovery rules are not before this Court. The Supreme Court has determined that "discovery for litigation purposes is not an expressly indicated purpose of [FOIA]." The FOIA was not enacted as a discovery device. Nor was it intended to serve as a broad discovery tool to circumvent agency rules.

*Capital Cities v. N. L. R. B., supra* at 977 (citations omitted).

■ We find no merit to the N.L.R.B.'s contention that the documents in question are exempt from disclosure under Exemption 7(C), as an unwarranted invasion of personal privacy. Apparently the N.L.R.B.'s contention is that the right to privacy includes the right to select the people to whom one will communicate his ideas. *Mylan Pharmaceuticals, Inc. v. N. L. R. B.,* 407 F.Supp. 1124 (W.D.Pa.1976). We are in agreement with the cases which have held this exemption applicable to matters much more commonly thought of as private, such as information concerning marital status, legitimacy of children, identity of fathers of children, medical conditions, welfare payments, alcoholic consumption, family fights, etc. *See e. g., Wine Hobby U. S. A. v. I. R. S.,* 502 F.2d 133 (3rd Cir. 1974); *Rural Housing Alliance v. Department of Agriculture,* 162 U.S.App.D.C. 122, 498 F.2d 73 (1974); *Ackerly v. Ley,* 137 U.S.App.D.C. 133, 420 F.2d 1336 (1969); *Ditlow v. Shultz,* 379 F.Supp. 326 (D.D.C.1974), *decision on appeal deferred,* 170 U.S.App.D.C. 352, 517 F.2d 166 (1975). *See also Department of the Air Force v. Rose,* —— U.S. ——, 96 S.Ct. 1592, 48 L.Ed.2d 11, 44 U.S.L.W. 4503, 4511 n. 16 (1976). The Court has examined the material in question and finds that there are no personal matters therein which should be protected under Exemption 7(C).

■ We also agree with the courts in *Mylan Pharmaceuticals, Inc. v. N. L. R. B., supra* and *Climax Molybdenum Co. v. N. L. R. B.,* 407 F.Supp. 208 (D.Colo.1975), that Exemption 7(D) does not apply in cases such as the instant one. As we pointed out in *Kaminer,* the use of the term "confidential source" in Exemption 7(D) was "to make clear that the identity of a person other than a paid informer may be protected if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." Conf. Rep. No. 93–1200, 93rd Cong., 2d Sess. (1974), U.S.Code Cong. & Admin.News 1974, pp. 6285, 6291. All of the "confidential sources" whose statements or affidavits are contained in these files are prospective witnesses whose identity will ultimately be disclosed to the respondent when they are called to testify. Weighing their interest in retaining their confidential status for a limited period of time against the FOIA's public policy of disclosure, we find no basis to consider such persons confidential sources within the meaning of Exemption 7(D), except for those persons whom the N.L.R.B. will stipulate that it will not call as witnesses.

In *Kaminer v. N. L. R. B., supra* we held that Exemption 7(A) was inapplicable but

that Exemption 7(D) did apply. This holding is entirely consistent with our holding in the instant case, given the factual differences in the two cases. *Kaminer* involved a request for information contained in a closed N.L.R.B. file. There was no possibility of interference with concrete prospective enforcement proceedings, nor was there any possibility that those persons whose statements were contained in the files sought would be called to testify.

Marathon requests that we enjoin further N.L.R.B. proceedings in the unfair labor practice charges pending against it until the Board makes available the nonexempt information contained in its file. Inasmuch as the N.L.R.B., through its Regional Director's letter of February 18, 1976 has previously offered to immediately make available the information which we now find disclosable, we find it unnecessary to reach the injunction issue.

█ Plaintiff also requests that it be awarded reasonable costs and attorneys' fees in accordance with Section (a)(4)(E) of the FOIA. Inasmuch as Marathon has not "substantially prevailed" herein, this request will be denied.

For the reasons stated above, plaintiff's Motion for Summary Judgment is denied and the defendant's Motion for Summary Judgment is granted. A Judgment conforming with the foregoing Opinion, approved as to form by attorneys for both parties, shall be presented within the time and in the manner prescribed by the Local Rules of this Court.