**Austin HATCHER, Jr., Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

Civ. A. No. 82–0762.

United States District Court, District of Columbia.

Oct. 25, 1982.

Jamie S. Gorelick, Seth P. Waxman, Anne Shere Wallwork, Washington, D.C., for plaintiff.

Robert E.L. Eaton, Jr., Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

This suit was brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain certain documents from the United States Postal Service relating to contractual dealings between the Postal Service and M.L. Hatcher Pickup and Delivery Service, Inc. and to a pending criminal investigation of plaintiff Hatcher and his corporation. The Postal Service, both initially and following an administrative appeal, granted Hatcher's FOIA request in part and denied it in part on the grounds that certain documents withheld fit within statutory exemptions to the FOIA disclosure requirements. On March 17, 1982, Hatcher initiated this FOIA suit challenging the Postal Service's action. The case is now before the Court upon Hatcher's motion for partial summary judgment seeking disclosure of withheld materials and the Postal Service's cross-motion for summary judgment.

The Postal Service's motion for summary judgment, filed May 21, 1982, is supported by the affidavit of Kenneth H. Fletcher, Chief Postal Inspector, describing the types of documents at issue. After a conference with the parties in open court on June 29, the Court found certain portions of the Fletcher affidavit insufficient and entered an Order on June 30 requiring the Postal Service to file a supplemental *Vaughn v. Rosen* index further describing those groups of documents inadequately described in the original affidavit. The supplemental *Vaughn* was filed September 10.

■ The Court finds that a further *in camera* inspection of the documents at issue is not necessary under the circumstances of this case. There is no strong public interest in disclosure of the requested documents, no evidence of bad faith on the part of the Postal Service, the Postal Service has not proposed *in camera* inspection, and, given the more than 1,500 pages of documents at issue, the interests of judicial economy would not be served by such inspection. *Allen v. CIA,* 636 F.2d 1287, 1298–99 (D.C. Cir.1980). More importantly, with the addition of the supplemental *Vaughn,* the affidavits presented by the Postal Service are adequate to determine with reasonable specificity whether the documents fall within a certain FOIA exception. *Hayden v. National Security Agency/Central Security Service,* 608 F.2d 1381, 1387 (D.C.Cir.1979),

cert. denied, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980); Allen, supra at 1291. On the basis of the parties' cross-motions for summary judgment and oppositions thereto, the Postal Service's original affidavits and supplemental Vaughn, and the entire record herein, the parties' cross-motions for summary judgment are granted in part and denied in part, as indicated below.

The documents in question have been grouped in the original affidavit provided by the Postal Service into thirteen groups, identified by the letters "A" through "M." Within some of these groups, individual documents have been further identified by number in the supplemental Vaughn, e.g., document A–1, document B–2, and so forth. Those appellations are adopted by the Court in this Memorandum and the attached Order.

As threshold matters, the Postal Service has now agreed that document D–6 and all the documents in group E will be disclosed if Hatcher so requests. Hatcher has requested copies of the documents and those shall be produced.

After receiving the Postal Service's supplemental Vaughn, Hatcher has agreed to withdraw his request for the remaining documents in group D, labeled D–1 through D–5. Hatcher has also withdrawn his request for documents A–1, A–9 through A–15, F–5, F–15 through F–17, F–19 through F–21, F–23, and F–24.

The Postal Service argues that the remaining materials it has withheld are exempt from disclosure under FOIA exemption 7, 5 U.S.C. § 552(b)(7)(A), and that it may also withhold the documents in question pursuant to the Postal Reorganization Act, 39 U.S.C. § 410(c)(6), which it argues is an exempting statute under FOIA exemption (3), 5 U.S.C. § 552(b)(3).

■ The Court finds that some of the remaining documents withheld are clearly exempt from disclosure under FOIA exemption 7, which provides that FOIA does not require disclosure of "investigatory records compiled for law enforcement purposes . . . to the extent that the production of such records would (A) interfere with enforcement proceedings . . . ." 5 U.S.C. § 552(b)(7)(A). Among the documents found exempt are all those contained in group A (except A–2 through A–5) and groups C, G, H, I, J, K, L, and M; documents F–1 through F–4, F–6 through F–8, F–13, F–14, F–18, F–22 and F–27 through F–30. After consideration of the Postal Service's original affidavit, its detailed supplemental Vaughn, and the record herein the Court finds that each of these documents is an investigatory document created or compiled in the course of the investigation, for law enforcement purposes, disclosure of which would interfere with enforcement proceedings by hindering investigation and placing the Service at a disadvantage when the time comes for it to present its case.[1] National Labor Relations Board v. Robbins Tire & Rubber Co., 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978).

---

1. All of those documents were created during and are directly related to the Postal Service's ongoing investigation of Hatcher's possible violations of law and thus meet the exemption 7 threshold test of being "investigatory records compiled for law enforcement purposes." Pratt v. Webster, 673 F.2d 408 (D.C.Cir.1982). The majority are materials relating directly to the merits of the investigation: documents concerning interviews with potential witnesses, the inspector's notes on the case, discussions of events leading to the investigation, litigation tactics, possible violations of law, and preliminary and final findings in the case. That group includes all the documents in groups A, C, H, I, J, K, and M, and F–1, F–14 and F–27 through F–28. Disclosure of those types of documents would clearly interfere with enforcement proceedings by creating the danger that defendants might be able to "construct defenses which would permit violations to go unremedied." Robbins, supra at 241. The remaining documents—F–18, F–2 through F–4, F–6 through F–8, F–13, F–22, F–31 and all the documents in groups G and L—are materials created pursuant to the administration of the investigation that, while not concerned with the merits of the investigation on their face, might still reveal the nature, focus, and limits of the Postal Service's investigation if disclosed. It is not necessary, under exemption 7, to show that interference with enforcement proceedings is likely to occur in this case if those documents are disclosed. It is enough if the Postal Service

■■ Congress has recognized the need to protect the rights of individuals facing criminal prosecution by authorizing through the Federal Rules of Criminal Procedure, as developed in well-established precedents, elaborate discovery which lays bare the prosecution's case to an accused in advance of trial. FOIA was never intended to permit an individual the opportunity to learn the details of the government's inquiry into his conduct in advance of his possible indictment. It takes no degree of sophistication to appreciate that such access is sought primarily to thwart and divert the inquiry. Where the government is pursuing a criminal investigation before a grand jury its work shall not be undermined by forcing disclosure through FOIA of its theories, its witnesses, its investigatory techniques and its deliberations as the appropriate charges, if any, to be recommended. Summary judgment must be granted the Postal Service as to those documents.[2]

The documents that remain at issue—documents A–2 through A–5, F–9 through F–12, F–25, F–26 and all the documents in group B—are those created prior to or independent of the investigation of Hatcher. Some, from the description provided by the Postal Service, were not created as part of the specific inquiry into Hatcher's possible violations of law but rather were acquired through routine agency program administration.[3] The remaining documents address the general interpretation of government regulations, policies, and procedures, and were not created as a part of the Postal Service's investigation of Hatcher.[4]

The Postal Service argues it may withhold those materials on the ground that to the extent they were not investigatory records from the inception, they have become substantially "violation-oriented" and "refocused" and have been legitimately and properly compiled as investigatory records. In other words, the Service claims it is authorized to withhold those remaining documents under exemption 7 because, while they were not initially created or compiled for law enforcement purposes, they have allegedly since acquired investigative significance as a result of initiation of the

has made a generic showing that disclosure of those particular kinds of investigatory records would generally interfere with enforcement proceedings. *Robbins, supra* at 234–36. The Court finds such a showing has been made.

2. In addition to claiming that the documents at issue are not exempt under (b)(7)(A), Hatcher also claims that the supplemental *Vaughn* filed by the Postal Service is insufficient in three respects to support a granting of summary judgment. First, Hatcher points out that the description of document F–26 as a "routing slip . . . subject unknown" is insufficient to establish the document as falling within exemption 7. The Court agrees, and orders the document disclosed, *infra*. Second, Hatcher argues that documents F–4, F–6, F–7 and F–8 are inadequately described because they refer to "INC, Boston." Counsel for the Postal Service has represented to the Court, upon inquiry, that the term "INC" which appears in the *Vaughn* several times refers to the Inspector in Charge of a division of the Postal Inspection Service. Finally, Hatcher alleges that the supplemental *Vaughn* is insufficient because it describes only 38 of the 213 pages of materials found in group A with no explanation as to why the remainder were omitted. This Court's Order of June 30, 1982, directed that the Postal Service develop a supplemental *Vaughn* describing all the materials in group A *except* those also included in

group B or those developed during the course of the investigation. The 175 pages from group A not included in the supplemental *Vaughn* fall into one of those two categories, and are ordered disclosed, *infra*, if they fall into the former category, and are exempt if they fall in the latter.

3. *See, e.g.,* all the documents in group B, which consist of material constituting the contract file for the route Hatcher had contracted to perform for the Service. That material was collected as a routine part of contract administration prior to the initiation of the investigation. Document F–25 is an undated memorandum concerning "administrative error in terminating contract and computing additional pay due contractor"; F–26 is a "routing slip . . . subject unknown."

4. *See, e.g.,* documents A–2 through A–5, all described as correspondence between the Postal Service and the Department of Labor concerning that agency's regulations, their interpretation and their enforcement. Each of these was created prior to the investigation of Hatcher. Documents F–9 through F–12 all concern the Postal Service's general policies and procedures regarding mail haul drivers, and again were created prior to the investigation.

criminal investigation against plaintiff and his company. For the reasons discussed below, the Court finds that the Postal Service is not authorized to withhold those documents under exemption 7.

■ The legislative history of the 1974 amendments to FOIA reveal that one of Congress' explicit purposes in substituting the term "record" for "file" in exemption 7 was to make clear that materials generated in the course of routine government operations could not be protected by commingling them with investigative materials generated by a subsequently-initiated law enforcement investigation. *Robbins, supra* at 229–30. Senator Hart, the sponsor of the 1974 amendments to exemption 7, expressed his concern that "such information as meat inspection reports, civil rights compliance information, and medicare nursing home reports will be considered exempt under the seventh exemption." House Committee on Government Operations and Senate Committee on the Judiciary, Freedom of Information Act and Amendments of 1974 (P.L. 93–502) Source Book, 94th Cong., 1st Sess. at 333 (Joint Committee Print 1975) (hereinafter cited as 1975 Source Book). Later, in arguing in support of overruling the President's veto of the 1974 amendments, Senator Hart stated that retention of the term "file" would arguably

allow an agency to withhold all the records in a file if any portion of it runs afoul of [the specific criteria for withholding investigatory records established by the amendment]. It is precisely this opportunity to exempt whole files which gives an agency incentive to commingle various information into one enormous investigatory file and then claim it is too difficult to sift through and effectively classify that information. 1975 Source Book at 451.

The Postal Service's attempt to justify withholding materials generated in the course of routine contract negotiations with and oversight of M.L. Hatcher Pickup and Delivery Service, Inc., and the general interpretation of agency regulations, procedures, and policies developed well before investigation of Hatcher, is thus expressly barred by the clear intent behind the amendment of exemption 7 in 1974.

The only colorable support for defendant's reliance on exemption 7 is contained in the Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act, prepared in February, 1975. The Memorandum states:

Records of more general information-gathering activities (e.g., reporting forms submitted by a regulated industry or by recipients of Federal grants) developed in order to monitor, generally or in particular cases, the effectiveness of existing programs and to determine whether changes may be appropriate, should not be considered "compiled for law enforcement purposes" except where the purpose for which the records are held and used by the agency becomes substantially violation-oriented, i.e., becomes re-focused on preventing, discovering or applying sanctions against noncompliance with federal statutes or regulations. 1975 Source Book at 516.

As noted in *Greentree v. United States Customs Service,* 674 F.2d 74, 85 (D.C.Cir. 1982), the executive's post-hoc interpretation of the 1974 amendments must be viewed circumspectly given that the President opposed passage. This is particularly appropriate in this instance because the President's veto message specifically objected to the proposed changes in exemption 7. The Court finds that the Attorney General's Memorandum is unpersuasive in light of the clear intent of Congress to exclude pre-investigatory documents of the type at issue from exemption 7.

■ The Postal Service further claims that it may withhold those materials pursuant to the Postal Reorganization Act, P.L. 91–375, adopted in 1970, which provides that FOIA shall apply to the Postal Service but specifically authorizes the Postal Service to withhold "investigatory *files,* whether or not considered closed, compiled for law enforcement purposes except to the extent available by law to a party other than

the Postal Service."[5]   39 U.S.C. § 410(c)(6) (emphasis added).   The Postal Service contends that this statute operates as an independent bar to access to the requested materials by reason of FOIA exemption 3 which provides that FOIA shall not apply to matters "specifically exempted from disclosure by statute ..., provided that such statute ... (B) establishes particular criteria for withholding, or refers to particular types of matters to be withheld."   The Court finds that, assuming 39 U.S.C. § 410(c)(6) qualifies as an exempting statute under (b)(3),[6] that provision does not authorize withholding of these materials either.   Accordingly, partial summary judgment will be entered for plaintiff and defendant will be directed to disclose those records.

The language of § 410(c)(6) is virtually identical to the language of exemption 7 as originally adopted by Congress in 1966, P.L. 89–554.   The only material difference in language is that § 410(c)(6) explicitly protects investigatory files, "whether or not considered closed."   Since the records at issue are part of an open file, § 410(c)(6) and the original exemption 7 establish an identical standard for exemption so far as those documents are concerned.   Accordingly, if those documents would not have been exempt under exemption 7 as originally enacted they cannot be exempt under § 410(c)(6).

Several decisions of the United States Court of Appeals for this Circuit expressly indicate that material of this type would not be exempt under the original exemption 7.   In *Center for National Policy Review on Race and Urban Issues v. Weinberger,* 502 F.2d 370 (D.C.Cir.1974), plaintiffs sought access to certain investigatory

materials compiled by the Office of Human Rights of the Department of Health, Education and Welfare.   While the Court held exempt certain materials generated in the course of investigating specific school districts suspected of practicing racial discrimination, the Court noted that the plaintiffs "were entitled to access to those parts of the 'open and active' files of the Office of Civil Rights that contain the kind of factual data submitted to the agency as a matter of routine."   *Id.* at 373–74.   A similar conclusion was reached in *Rural Housing Alliance v. United States Department of Agriculture,* 498 F.2d 73 (D.C.Cir.1974).   In that case the Court considered the issue whether "an agency's internal monitoring to insure that its employees are acting in accordance with statutory mandate and the agency's own regulations [is] an investigation 'for law enforcement purposes' within the meaning of exemption 7?".   The Court answered the question in the negative:

> On its face, exemption 7's language appears broad enough to include all such internal audits.   If this broad interpretation is accepted, however, we immediately encounter the problem that most information sought by the Government about its own operations is for the purpose ultimately of determining whether such operations comport with applicable law, and thus is "for law enforcement purposes."   Any internal auditing or monitoring conceivably could result in disciplinary action, in dismissal or indeed in criminal charges against the employees.   But if this broad interpretation is correct, then the exemption swallows up the Act; exemption 7 defeats one central purpose of the Act to provide public access to infor-

---

**5.** Section 410(c)(6) of 39 U.S.C. essentially tracks the language of FOIA exemption 7 prior to its amendment in 1974, *see* P.L. 93–502, which exempted "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than the agency."   The obvious purpose of 39 U.S.C. § 410(c)(6) was to ensure that as applied to the Postal Service FOIA would not require disclosure of "closed" as well as "open" files.

**6.** The Court notes that there is a substantial ground for a difference of opinion as to whether § 410(c)(6) is a statute which authorizes the withholding of government materials under exemption 3 under the test enunciated in *American Jewish Congress v. Kreps,* 574 F.2d 624 (D.C.Cir.1978).   *Compare Church of Scientology v. USPS,* 633 F.2d 1327 (9th Cir.1980), *with McClosky v. Department of Justice,* No. 77–470 (D.D.C. November 8, 1978).

mation concerning the Government's own activities. *Id.* at 81.

Given the identity in language between § 410(c)(6) and pre-amendment exemption 7, the Court concludes that these decisions are persuasive authority for purposes of defining the scope of § 410(c)(6). The Court therefore concludes that § 410(c)(6) does not authorize the withholding of documents generated by the Postal Service in the course of its negotiations and oversight of its contract with the company or its interpretation and development of general regulations, procedures, and policies, prior to or independent of the initiation of a law enforcement investigation which focused on plaintiff and/or M.L. Hatcher Pickup and Delivery Service, Inc.[7]

An appropriate Order reflecting disposition of the various documents in dispute is filed herewith.

---

[7] The Court recognizes the seeming contradiction in the fact that these documents may not be withheld under either original or post-1974 exemption standards, especially given that one of Congress' purposes in 1974 in substituting the term "records" for "files" was to "make clear that courts had to consider the nature of the particular document as to which the exemption was claimed, in order to avoid the possibility of impermissible 'commingling' by an agency's placing in an investigatory file material that did not legitimately have to be kept confidential." *Robbins, supra* at 229–30. The 1974 amendments to exemption 7 were intended in part to overrule certain decisions of the United States Court of Appeals for the District of Columbia, including *Center for National Policy Review on Race and Urban Issues v. Weinberger, supra,* which apparently indicated that exemption 7 applied to any investigatory file regardless of whether the agency had demonstrated any reason why disclosure should not be made. *See Robbins, supra* at 228–29. The term "record" was not substituted for "file" to overrule any specific judicial result, but rather based on an apprehension that courts might also liberally construe the types of materials protected by exemption 7. *See* 1975 Source Book at 333. The issue acquired a certain importance in the course of congressional deliberations only because President Ford's veto of the 1974 amendments was justified in part by his concern that the amendment of exemption 7 would require law enforcement officials to engage in the burdensome task of sifting through investigative files in order to identify disclosable portions. *See* 1975 Source Book at 398.