RAYTHEON COMPANY, Plaintiff,

v.

DEPARTMENT OF the
NAVY, Defendant.

Civ. A. No. 88–0094.

United States District Court,
District of Columbia.

Jan. 5, 1989.

Loren Kieve, Debevoise & Plimpton, Washington, D.C., for plaintiff.

Daniel Bensing, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This matter comes before us on the parties' cross motions for partial summary judgment. Plaintiff Raytheon Company ("Raytheon") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq., seeking to enjoin the Defense Contract Audit Agency ("DCAA") and the Naval Sea Systems Command ("NAVSEA") from withholding certain records involving fourteen contracts between Raytheon and the Department of the Navy. The parties' cross motions for summary judgment, which are the subject of this memorandum opinion, pertain to the documents requested from the DCAA on November 5, 1987.[1]

Defendant has denied plaintiff access to these documents on the ground that they are exempt from disclosure pursuant to Exemption 7(A) of FOIA. The DCAA claims that the documents at issue are "records or information compiled for law enforcement purposes" and that disclosure would "interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Plaintiff takes issue with defendant's assertion and contends that the documents it has requested are, for the most part, routine,

---

1. A scheduling order for the processing of release determinations concerning 17,000 pages of NAVSEA documents has been entered this day.

Some of these documents are the same documents contained in the DCAA files.

"garden variety" contracting documents prepared prior to the institution of the investigation of Raytheon by the Department of Justice in October 1984. For the reasons that follow we grant defendant's motion for summary judgment and deny plaintiff's motion.

## BACKGROUND

Between 1976 and 1981, Raytheon and the Department of the Navy entered into fourteen negotiated, sole-source firm fixed price contracts involving what is known as the BBQ–5 and SQS–56 Programs for pilot production and subsequent full-scale production of the SQS–56 surface-ship sonar and the BBQ–5 submarine sonar. Beginning in 1980, the DCAA conducted defective pricing audits on several of the contracts with Raytheon. According to defendant, these audits uncovered information indicating that the costs and pricing submitted by the Submarine Signal Division of Raytheon in its contract proposals were not "current, complete, and accurate" as required by the Truth in Negotiations Act.[2] These defective pricing audits were completed in July of 1984 and the results were sent to NAVSEA, which referred the audits to the Department of Justice. In October of 1984 the Department of Justice began its investigation.[3] Subpoenas to produce documents were issued to Raytheon by a federal grand jury in June of 1985.[4] This grand jury investigation is continuing currently.

On November 5, 1987 Raytheon submitted a FOIA request to the DCAA requesting all "memoranda, reports, correspondence or notes pertaining to Raytheon Company's proposed or actual use of Raytheon Service Company personnel" on the fourteen contracts. *See* Exhibit 2 to Plaintiff's Opposition to the Government's Mo-

tion for Partial Summary Judgment. On February 26, 1988 the DCAA issued its final response to plaintiff's November 5, 1987 FOIA request. The DCAA released two reports and denied plaintiff access to the remainder of the requested documents on the basis that they were exempt from disclosure pursuant to Exemption 7(A) of FOIA. *See* Exhibit H to Plaintiff's Opposition. Defendant specified that the "release of the records would compromise if not destroy the orderly process of the NIS investigation by revealing the direction it is taking and adversely affecting the attitudes and cooperation of present and potential witnesses." *Id.* After exhausting its administrative appeals, plaintiff on June 7, 1988 filed a complaint regarding denial of the bulk of its November 5, 1987 FOIA request to the DCAA.[5]

Defendant has moved for partial summary judgment regarding plaintiff's November 5, 1987 FOIA request for documents from the DCAA on the ground that the records are exempt from disclosure pursuant to Exemptions 7(A) and 5 of FOIA. Plaintiff opposes the motion and has moved for summary judgment in its favor.

## DISCUSSION

In Exemption 7(A) cases, a procedure has developed whereby the government may use a "generic approach" to claiming the exemption by grouping documents into functional categories. It "need not proceed on a document-by-document basis." *Bevis v. Department of State*, 801 F.2d 1386, 1389 (D.C.Cir.1986). "If the government chooses to rely on generic determinations, its definitions of the relevant categories of documents must be sufficiently distinct to allow a court to grasp 'how each … category of documents, if disclosed, would interfere with the investigation.'" *Crooker v. Bureau of Alcohol, Tobacco and Fire-*

---

**2.** Specifically, these audits raised questions regarding Raytheon's representation that it planned to use higher cost labor to perform certain tasks, when it had been using lower cost Raytheon Service Company employees to perform the tasks.

**3.** In November of 1984, the Naval Investigative Service ("NIS") opened an investigation into the same matters.

**4.** The Naval Investigative Service issued subpoenas to Raytheon in September of 1985.

**5.** This was done by way of amending its original complaint in this proceeding, which until that time involved two other FOIA requests—one to the DCAA and one to NAVSEA—both made on February 10, 1986.

*arms,* 789 F.2d 64, 67 (D.C.Cir.1986) *quoting, Campbell v. Department of Health and Human Services,* 682 F.2d 256, 265 (D.C.Cir.1982). The government's description of the categories must allow the court "to trace a rational link between the nature of the document and the alleged likely interference." *Crooker,* 789 F.2d at 67.

Plaintiff maintains that the government has not described the records with sufficient detail so that the court could possibly establish a link between the nature of the documents and the interference with the pending investigation that would likely result from the release of the documents. We disagree.

Records responsive to plaintiff's November 5, 1987 FOIA request were grouped into five functional categories based on the source, type of document, and its purpose in the investigation as follows:

(1) "Analyses" of subpoenaed documents and grand jury testimony created by Woods after the Department of Justice investigation began in October 1984. *See* Declaration of David J. Woods ¶ 9.

(2) "Green folders" containing the raw material—i.e., copies of the audit report, pre award and post award clearance letter, the certificate of current pricing, copies of the contracts, and work papers analyzing the financial impact of the defective pricing issues involved in each of the contracts—selected by Woods from the DCAA defective pricing files and NAVSEA files upon which Woods prepared his audit reports. *See id.* ¶ 10;

(3) "Blue folders" containing drafts of the final audit report, narrative work papers, computational work papers, portions of Raytheon's proposal submitted to the government, administrative work papers, documents summarizing the positions with regard to the issues in the audit, and other various documents related to the audit reports. *See id.* ¶ 11;

(4) Transcripts of Grand Jury testimony from which Woods extracted data pertinent to the investigation. *See id.* ¶ 12; and

(5) Computer printouts, reflecting Woods' calculations of the potential claims which the government might assert. *See id.* ¶ 12.

It is well settled that the mere location of records in an investigative file is, standing alone, not sufficient to permit the government to refuse to disclose the records under Exemption 7(A). *See, e.g., N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 236, 98 S.Ct. 2311, 2323, 57 L.Ed.2d 159 (1978); *Crooker,* 789 F.2d at 66. Rather, it is incumbent on the government to make a presentation that allows the court to comprehend how each withheld category of documents, if disclosed, would interfere with an ongoing investigation. *Crooker,* 789 F.2d at 67.

■ The gravamen of plaintiff's complaint relates to the documents it has requested which are described in categories (2) and (3) listed above.[6] It asserts that all are routine, garden-variety contracting documents prepared prior to the institution of the investigation by the Department of Justice in October 1984, following the conclusion of the defective pricing audits in July 1984. *See* Plaintiff's Opposition at 13. Plaintiff claims that the documents it has requested can easily be segregated from

---

**6.** Plaintiff apparently does not seriously dispute that the records described in categories (1), (4), and (5) listed above are shielded under Exemption 7(A). It has offered no arguments or affidavits to dispute the government's claimed exemption as to these categories, except to claim that the categorization of the documents is insufficient for the court to draw a rational connection between disclosure of the documents in a given category and the alleged likely interference. We find defendant's presentation is sufficient to clearly indicate that interference with the ongoing investigation would likely result if the records were disclosed. All of the doc-

uments described in category (1) were created *after* Woods was assigned to work full-time on the investigation and appear to be investigative work products subject to the grand jury restrictions pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure. Categories (4) and (5) are also comprised of records created *after* the institution of the investigation by the Department of Justice and do not comport with what Raytheon now characterizes as its request for "routine, garden-variety contracting documents prepared prior to the institution of the investigation." Plaintiff's Opposition at 13.

documents DCAA auditor Woods may have created after the initiation of the investigation. *Id.*

On the record before us, we cannot conclude that the audit reports and other records at issue were compiled as a matter of routine. According to the defendant, DCAA auditor Woods, while conducting a Proposal Review on the 1981 Buy in the BBQ–5 Program, had already uncovered information indicating that Raytheon's pricing of certain labor costs was defective. *See* Defendant's Statement of Material Facts as to which there is No Dispute ¶ 7. The DCAA subsequently opened a defective audit on certain prior BBQ–5 Program and SQS–56 Program contracts and discovered the same problems in several of those contracts as well. *See id.* ¶ 8. Thus, at the time these records were made, the DCAA had departed from the routine and focused special attention on specific aspects of plaintiff's proposals and activities.[7] This inquiry by the DCAA may be viewed as part and parcel of the investigation into plaintiff's costs and pricing practices, which is still continuing today. The court recently reached a similar conclusion in *Gould Inc. v. General Services Administration,* 688 F.Supp. 689, 697 (D.D.C.1988), where the court concluded:

> While an ultimate law enforcement investigation may not be the critical objective of this audit process, it clearly is a real possibility. And until this audit process is completed—with the result that no further proceedings are recommended—these audits have the requisite law enforcement tilt to them which should cloak them with Exemption 7 protection.

We find the same to be true in the case at bar.

 Plaintiff also challenges defendant's assertion that the withheld documents were "compiled for law enforcement purposes" as required under 5 U.S.C. § 552(b)(7). Plaintiff, relying heavily on *Hatcher v. United States Postal Service,* 556 F.Supp. 331 (D.D.C.1982) and *Gregory v. FDIC,* 470

F.Supp. 1329 (D.D.C.1979), *rev'd in part on other grounds,* 631 F.2d 896 (D.C.Cir. 1980), asserts that because some of the materials in Woods' files were prepared during the course of routine agency contract administration, they may not be withheld under Exemption 7. Plaintiff appears to argue that unless the documents were originally created or compiled for law enforcement purposes, the materials can never be covered under Exemption 7 of FOIA, regardless of how such materials are subsequently used or whether disclosure would interfere with ongoing law enforcement investigations. This issue was also addressed at some length in *Gould Inc., supra* at 697–703. After extensively reviewing the caselaw and the legislative history of Exemption 7 and its amendments, the court rejected adopting a rigid litmus test that would require the release of any material originally compiled by a government agency for a purpose other than law enforcement without considering how such materials are currently being used. Instead, the court concluded that

> regardless of how the government originally comes into the possession of documents or information, where those "documents or information are later compiled into a record for a pending or active investigation, and such investigation is pending or active at the time the request is made, disclosure *may* be withheld under Exemption 7(A)."

*Gould Inc., supra* at 702, *quoting Fedders Corp. v. FTC,* 494 F.Supp. 325, 328 (S.D.N.Y.1980) (emphasis added). In other words, the focus of our inquiry is not so much whether the documents were created *originally* for purposes of law enforcement, but rather whether the documents, as they existed at the time of the FOIA request, were compiled for purposes of a pending law enforcement investigation and whether the release of the documents would interfere with that investigation. Because we find that the documents, at the time they were

---

**7.** "The present inclusion of these audit reports in the investigatory record or file is the result of the natural and legitimate progression of materials underlying a routine audit—after that audit uncovered potential criminal wrongdoing—to a law enforcement file." *Gould Inc. v. General Services Administration,* 688 F.Supp. 689, 703 (D.D.C.1988).

segregated and assembled, were "compiled" as part of an ongoing law enforcement investigation, we now turn to the question of whether releasing the documents would interfere with the ongoing investigation.

■ Defendant argues that release of the records described in categories (2) and (3), the categories in which plaintiff is most interested, would jeopardize the pending investigation by disclosing which documents the government found significant enough to segregate, revealing the government's calculations with regard to the financial impact of various defective pricing issues, and disclosing the general direction and scope of the investigation. *See* Declaration of Woods ¶¶ 10 & 11. The government maintains, with some specificity, that disclosure of the requested documents would enable plaintiff to interfere with the ongoing investigation by altering or destroying other documents in its files which have not yet been subpoenaed by the government through various tactics, *i.e.*, coaching witnesses based on their knowledge of what the government knows and the general direction of the investigation; devising fraudulent explanations of its actions to coverup any misconduct; and intimidating Raytheon employees who might have given interviews to government agents in order to discourage future cooperation with the government. Furthermore, the government argues that release of the documents could indicate the type of enforcement proceeding the government is contemplating (*i.e.* civil, criminal, or administrative), the nature of the charges it might file, and the government's estimation of its damages, which could be particularly valuable to Raytheon in the event of settlement negotiations. *See* Supplemental Declaration of David J. Woods.

In summary, we find that the government has made the requisite showing that the records at issue were compiled for law enforcement purposes and that the disclosure of the records could reasonably interfere with the ongoing law enforcement investigation.

Orders consistent with the foregoing have been entered this day.