502 F.2d 370
 163 U.S.App.D.C. 368
 CENTER FOR NATIONAL POLICY REVIEW ON RACE AND URBAN ISSUES et al.
v.
Caspar W. WEINBERGER, Secretary, Department of Health,
Education and Welfare, et al., Appellants (two cases).
 Nos. 73-1090, 73-1093.
 United States Court of Appeals, District of Columbia Circuit.
 Argued June 5, 1973, Rehearing Denied in No. 73-1090 Aug. 30, 1973.
Decided May 21, 1974.
 
 Ronald R. Glancz, Atty., Dept. of Justice with whom Harold H. Titus, Jr., U.S. Atty., was on the brief for appellants. Walter H. Fleischer, Atty., Dept. of Justice also entered an appearance for appellants.
 John Silard, Washington, D.C., with whom Joseph L. Rauh, Jr. and Elliott C. Lichtman, Washington, D.C., were on the brief, for appellees.
 Before DANAHER, Senior Circuit Judge, LEVENTHAL, Circuit Judge, and KAUFMAN,* United States Judge for the District of Maryland.
 LEVENTHAL, Circuit Judge:
 
 
 1
 The issue before us is whether the Secretary of Health, Education and Welfare may resist disclosure of the material of 22 'open and active' files involving agency review of public school segregation and discrimination practices in northern localities. We hold that such material falls within exemption 7 of the Freedom of Information Act and reverse the order of the District Court requiring disclosure under that statute.
 
 A. Statutory and Judicial Background
 
 2
 Racial discrimination in any activity or program that receives financial assistance from the Federal Government is prohibited by 42 U.S.C. 2000d. Available enforcement procedures are outlined in 2000d-1; the ultimate sanction is a termination of financial assistance following an administrative determination that racial discrimination exists.
 
 
 3
 To carry out its mandate under these provisions, the Office for Civil Rights of the Department of Health, Education and Welfare 'undertake(s) factual investigations when there is reason to suspect that a public school or district which is the recipient of federal aid may be practicing racial segregation or discrimination.' (complaint, item 5). Plaintiffs sought disclosure of files compiled in a large number of these investigations. After negotiations with HEW yielded a substantial number, but not all, of these files, plaintiffs brought an action to compel disclosure of the rest, asserting that the agency had a duty to disclose under the Freedom of Information Act, 5 U.S.C. 552(a) (3). The agency claims that these files are exempt from disclosure under section 552(b)(7) of the FOIA, which provides:
 
 
 4
 (b) This section does not apply to matters that are--
 
 
 5
 (7) investigatory files compiled for law enforcement purposes . . ..
 
 
 6
 Recent decisions of this court[1] construing exemption 7 have considerably narrowed the scope of our inquiry. The sole question before us is whether the materials in question are 'investigatory files compiled for law enforcement purposes.' Should we answer that question in the affirmative, our role is 'at an end.' Weisberg v. Department of Justice, supra note 1. We therefore consider, in reverse order, the requirements that the files be (1) investigatory in nature, and (2) compiled for law enforcement purposes.
 
 
 7
 B. 'Compiled for law enforcement purposes'
 
 
 8
 For a file to be deemed to have been compiled for law enforcement purposes it is not necessary that an adjudication have been imminent or even likely, either at the time the material was amassed or at the time disclosure is sought under the FOIA. In Weisberg, supra, we held that exemption 7 applied to material relating to the assassination of President Kennedy long after the prospect of prosecution had passed. In Aspin v. Laird, supra, note 1, we held the exemption applicable to a report that formed the basis for prosecutions that, with one exception, had been concluded. See also Frankel v. SEC, 460 F.2d 813 (2d Cir.), cert. denied, 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972). And in Ditlow v. Brinegar, supra, note 1, we held the exemption applicable to material amassed in connection with an enforcement proceeding that was merely 'conceivable.' Likelihood of adjudication is not the decisive determinant of whether a file has been compiled for law enforcement purposes.
 
 
 9
 Our cases have also established that the term 'law enforcement' extends beyond criminal proceedings. Both Ditlow v. Brinegar, supra, and Bristol-Myers Co. v. FTC, 138 U.S.App.D.C. 22, 424 F.2d 935, cert. denied,400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970), endorsed the view propounded in the legislative history[2] that civil as well as criminal law enforcement activities are within the purview of the exemption. While an administrative determination of ineligibility for governmental benefit is not attended by the same safeguards and procedures as a judicial determination in a criminal or civil proceeding, it is a governmental action that must be accompanied by due procedure.[3] We think it has the salient characteristics of 'law enforcement' contemplated by the wording of exemption 7. Here the statute,42 U.S.C. 2000d-1, places initial reliance on voluntary compliance, and indeed requires discussion with local entities before formal steps are taken. But the effectiveness of these informal procedures is derived in large part from the sanction held in reserve, and the file that is compiled for negotiation is also compiled for ultimate use, if need be, in a formal action.
 
 
 10
 It is not decisive for purposes of the applicability of exemption 7 that a relatively small number of investigations result in formal action. Where an agency, like HEW, has both voluntary compliance and formal determination functions, though the investigations may end up directed to one or both, the pertinent files are 'compiled for law enforcement purposes.'[4]
 
 
 11
 C. 'Investigatory files'
 
 
 12
 It is claimed that HEW is engaged merely in administering federal aid programs, and that the documents in question are ancillary to that task rather than investigatory in nature. If this characterization is correct, the material is not protected by exemption 7.[5] There is no clear distinction between investigative reports and material that, despite occasionally alerting the administrator to violations of the law, is acquired essentially as a matter of routine. What is clear, however, is that where the inquiry departs from the routine and focuses with special intensity upon a particular party, an investigation is under way. We think plaintiffs were entitled to access to those parts of the 'open and active' files of the Office of Civil Rights that contain the kind of factual data submitted to the agency as a matter of routine (A. 64). But plaintiffs have already gained access to such materials in the course of this dispute. What remains for decision at the present juncture is the claim of access to the balance of materials in these 22 files, and these, in our view, were compiled through 'investigations' rather than routine monitoring. Indeed, although this is not dispositive, plaintiffs' complaint itself characterized the inquiries as 'investigations.' (A. 7). More important, it appears that as to these files the HEW inquiry typically involved 'access to every file and perhaps (a) visit (to) every school in the system, and interview(§ with) teachers and children.' (A. 41). This is the kind of special scrutiny that goes beyond general administration and is properly characterized as an 'investigation.'
 
 D. Overall Consequences
 
 13
 The two elements of the statute have been discussed separately for purposes of analysis, but they obviously fuse and interact. Taking the provision as a whole, we conclude that these 22 files fall within the literal meaning of the statute as 'investigatory files compiled for law enforcement purposes.' A. court may qualify the plain meaning of a statute when its consequences-- plainly absurd, inequitable, or in conflict with legislative history-- permit the court to discern a clear legislative intention to the contrary. But that is not the situation in the case at bar.
 
 
 14
 The policy reasons for the FOIA exemption for 'investigatory files compiled for law enforcement purposes' include such matters as the protection of the identity of informants and other confidential records; the protection of persons who are being or have been investigated from unwarranted invasion of privacy and damage to reputation; and protection of agencies from disclosure of investigative techniques.
 
 
 15
 Without engaging in any 'balance' of considerations, which would exceed our judicial role, we think it apparent that the policy considerations underlying exemption 7 are applicable in some measure to the files before us. The experience of the Office for Civil Rights is that only by keeping promises of strict confidentiality is it able to conduct thorough investigations. In an area as sensitive as school desegregation, investigators find that to secure cooperation, they must be able effectively to immunize those who would help from harassment, threats and social pressures. (A. 40). Finally, the agency's experience has been that its files often contain privileged material as well as material that is potentially and needlessly damaging to the careers and reputations of local teachers and school officials. (A. 42-3).
 
 
 16
 Since these files are 'investigatory files compiled for law enforcement purposes,' our duty is 'at an end.' In view of our recent exemption 7 cases (supra note 1), which were not available to the District Court, its judgment must be
 
 
 17
 Reversed.
 
 On Appellees Petition for Rehearing
 ORDER
 
 18
 On consideration of appellee's petition for rehearing, it is
 
 
 19
 Ordered by the Court that the aforesaid petition for rehearing is denied.
 
 SUPPLEMENTAL OPINION
 LEVENTHAL, Circuit Judge:
 
 20
 Appellee's petition for rehearing leads us to add a clarifying note, in order to avoid misunderstanding of our opinion. The FOIA provides for disclosure of government files unless an exemption is established-- unless, in case of a claim that Exemption 7 is applicable, it is established that the controversy relates to 'investigatory files compiled for law enforcement purposes.' We cannot accept the contention that the Administrator's assertion that files are 'investigatory' is conclusive. In Weisberg v. Department of Justice, 160 U.S.App.D.C. 71, 489 F.2d 1195, we stated:
 
 
 21
 Granted that the Attorney General may designate certain investigatory files as having been compiled for law enforcement purposes, his ipse dixit does not finalize the matter, for there remains the judicial function of determining whether that classification be proper. (at 78, 489 F.2d at 1202)
 
 
 22
 In Rural Housing Alliance v. Department of Agriculture, 162 U.S.App.D.C. , 498 F.2d 73 (1974), we remanded for an evidentiary hearing as to the initial purpose of the investigation, in order to ascertain whether the files in fact were compiled for law enforcement purposes.[6]
 
 
 23
 Our opinion in this case is entirely congruent with Rural Housing Alliance, likewise focusing on the initial purpose of the investigation. But we see no need for remand, for the instant case is relatively clear.
 
 
 24
 In this case, unlike Rural Housing Alliance, there was no internal audit of the functioning of Federal employees but an investigation of state institutions, and the petitioner in essence raised a question as to end results rather than initial purpose. Appellees acknowledged at the outset that the files were investigative in nature; their sole contention was that the prospect of law enforcement action was too remote for the exemption to apply. We rejected that contention in this case, but we did not mean that the exemption is established by the mere fact that one of the purposes of opening a file is investigative, or that sanctions hover as a possibility somewhere down the road, or that some material in some file may at some point be used for some law enforcement purpose. With that kind of extrapolation the exemption clause would reach so far as to swallow up the basic statutory presumption of disclosure. In considering whether a request for disclosure involves 'investigatory files compiled for law enforcement purposes,' the court will of course give consideration to the executive's submission, but it will be governed, not by logic pushed to extremes, but by good sense and the essential heft of the case.[7]
 
 
 
 *
 Sitting by designation pursuant to Title 28, U.S.C. 292(c)
 
 
 [1]
 Weisberg v. Department of Justice, 160 U.S.App.D.C. 70, 489 F.2d 1195 (1973) (en banc), cert. denied, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772, (1974); Aspin v. Department of Defense (Laird), 160 U.S.App.D.C. 231, 491 F.2d 24 (1973); Ditlow v. Brinegar, 161 U.S.App.D.C. 154, 494 F.2d 1073 (1974) (per curiam)
 
 
 [2]
 See H.R.Rep.No.1497, 89th Cong., 2d Sess. 11 (1966):
 This exemption covers investigatory files related to enforcement of all kinds of law, labor and securities laws as well as criminal laws. This would include files prepared in connection with related Government litigation and adjudicative proceedings.
 
 
 [3]
 Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)
 
 
 [4]
 We need not consider the case of an agency that has only consultative authority
 
 
 [5]
 We do not understand appellants to dispute that proposition. See appellant's reply supplemental memorandum at 6 n. 4
 
 
 [6]
 The court distinguished between an internal audit of government employees, and investigations which focus directly on specifically alleged illegal acts of particular officials which, if proved, could result in civil or criminal sanctions like those that the government could launch against private parties
 
 
 [7]
 In our May 21, 1974, opinion in this case we specifically noted that the different elements of the problem 'fuse and interact.' In Rural Housing Alliance, it will be seen that the court was dealing with the elements of the case as they 'fuse and interact.'