**E. A. GREGORY et al., Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORP., Defendant.**

Civ. A. No. 78–1702.

United States District Court, District of Columbia.

March 29, 1979.

---

of Information Act (hereinafter, "FOIA") action. 5 U.S.C. §§ 552 *et seq.* This case raises questions concerning exemptions five, six, seven, and eight. 5 U.S.C. § 552(b)(5), (6), (7), and (8).

## I. BACKGROUND.

By two letters dated July 7, 1978, and a third letter dated July 18, 1978, the plaintiffs, E. A. Gregory, Vonna Jo. Gregory, and the Faith Investment Company, Inc., wrote to the Executive Secretary of the defendant, the Federal Deposit Insurance Corporation (hereinafter, "FDIC") seeking records pursuant to the FOIA. One of the letters dated July 7, 1978, requested copies of documents in the FDIC's possession as insurer of the closed First Bank of Macon County for the period April 1, 1976, through the termination of business on January 26, 1978. The second letter dated July 7, 1978, requested copies of documents in the FDIC's possession as insurer of the closed Wilcox County Bank for the period June 1, 1975, through the termination of business, March 1, 1978. The letter dated July 18, 1978, requested copies of all documents in the defendant's possession naming any of the plaintiffs. In each of these letters, the term "documents" was defined as "all written material normally understood by reasonable persons to be encompassed thereunder, including but not limited to memoranda, correspondence, reports, telephone logs, work papers, minutes, pink sheets or microfilm of any of the foregoing."

Charles Emmet Lucey, McDermott, Will & Emery, Washington, D. C., for plaintiffs.

Barbara Allen Babcock, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., Vincent M. Garvey, Betsy Ginsberg, U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Cross-motions for summary judgment are currently before the Court in this Freedom

By three letters dated August 4, 1978, the Executive Secretary of the FDIC responded to each of the plaintiffs' requests. The FDIC released a number of the documents requested by the plaintiffs; however, the FDIC declined to release others on the basis of exemptions (4), (5), (6), and (8) of the FOIA, 5 U.S.C. § 552(b)(4), (5), (6), and (8).

By letter dated August 8, 1978, the plaintiffs asked the FDIC to consolidate their three requests and initiated an administrative appeal of the FDIC's refusal to release

documents responsive to their request. As a result of this appeal, additional material was released. However, in a letter dated September 6, 1978, the agency indicated that it would continue to withhold a substantial number of responsive records.

This action was filed on September 11, 1978, to enjoin the withholding of FDIC records responsive to the plaintiffs' request. On November 16, 1978, over the objections of the FDIC, the Court ordered the FDIC to file an index to the disputed documents, pursuant to *Vaughn v. Rosen,* 157 U.S.App. D.C. 340, 484 F.2d 820 (1973), *cert. denied* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). On December 8, 1978, the FDIC filed an eighty-five (85) page detailed justification, itemization, and index of the documents withheld.

Following discovery, which included some interim skirmishes, the parties have cross-moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The FDIC now relies on exemptions five, six, seven, and eight to justify their refusal to release the records requested by the plaintiffs.

## II. EXEMPTION EIGHT OF THE FOIA DOES NOT APPLY TO CLOSED BANKS.

Under exemption eight of the FOIA, agencies are not compelled to disclose matters that are "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8). The FDIC, unquestionably an agency responsible for the regulation and supervision of financial institutions within exemption eight, has declined to disclose examination reports of the Macon and Wilcox County Banks despite the fact that these banks are now closed.

The plaintiffs contend that the eighth exemption does not apply to closed banks. In response, the FDIC argues that the stat-ute makes no differentiation between open and closed banks, and that these records fall within the plain language of the statute.

■ The FDIC is correct in asserting that these documents fall within the plain language of the statute. Although the exemption's plain meaning is the Court's first step in interpreting its language, when a literal reading leads to an unreasonable result, a court can look behind the plain meaning of the statute. *Consumers Union v. Heimann,* 191 U.S.App.D.C. 8, 10, 589 F.2d 531, 533 (1978).

To an important extent, both sides in this action agree that the plain meaning of the statute results in an unreasonable result. Under a literal reading, the eighth exemption would seal the records of a bank for all time, even after the bank has been closed for centuries. The FDIC concedes that, despite the plain language of the exemption, "the passage of time and the fact that a bank is closed may affect the releasibility of examination reports." Defendant's Opposition to Plaintiffs' Cross-motion for Partial Summary Judgment, at 8 (February 26, 1979). Therefore, the plain language of the statute leads to an unreasonable result, and the Court must examine the legislative history of the exemption to determine the Congressional intent behind its enactment.

■ Clearly, the central purpose of the exemption is to protect the financial integrity of banks. As the Court of Appeals recognized in *Consumers Union v. Heimann,* 191 U.S.App.D.C. at 11, 589 F.2d at 534, "the primary reason for adoption of exemption 8 was to ensure the security of financial institutions." (citation omitted). The Court in *Consumers Union* found legislative history to show that "there was concern that disclosure of examination, operation, and condition reports containing frank evaluations of the investigated banks might undermine public confidence and cause unwarranted runs on banks." *Id.* (citation omitted).

■ Applying the intent of Congress to the interpretative analysis required by this

case, the Court finds that the primary rationale behind the exemption is not advanced in the context of a closed bank. Once a bank has been closed, its financial soundness cannot be undermined.

The FDIC relies on a secondary purpose behind the exemption identified by the majority of the panel in *Consumers Union* : to safeguard the relationship between the banks and their supervising agency. *Id.* 191 U.S.App.D.C. at 11, 589 F.2d at 534. The court in *Consumers Union* found that "[i]f details of the bank examinations were made freely available to the public and to banking competitors, there was concern that banks would cooperate less than fully with federal authorities." *Id.* 191 U.S.App. D.C. at 11, 589 F.2d at 534 (citation omitted).

Chief Judge Wright, concurring in *Consumers Union,* strongly undermined the persuasive value of the secondary rationale advanced by the FDIC for the eighth exemption:

> [T]he Comptroller's argument that confidentiality is necessary to maintain the smooth functioning of the examination process and the cooperation of bank officials seems to me to be of very limited force. Not only does the Comptroller have a considerable arsenal of weapons at his disposal to compel disclosure, but the costs of employing that arsenal are assessed upon the institutions he supervises recalcitrance on the part of the banks would therefore lead simply to higher assessments. Further, it should go without saying that preserving good relations between regulators and those they regulate is a goal which, however desirable in moderation, can if overemphasized be flatly inconsistent with the very purposes of regulation itself.

*Id.* 191 U.S.App.D.C. at 17, 589 F.2d at 541 (citations omitted).

The limited force of the secondary rationale behind the exemption is further limited in the context of a closed bank. If the reports of closed banks were releasable under the FOIA, perhaps the remote possibility that the bank may someday close will add some increment of interference with the smooth functioning of the relationship between the regulators and the bank. However, this small amount of interference with the secondary purpose of the exemption is insufficient to support the absurdity which would result under a literal reading of the statute. Congress could not have intended bank records to be forever sealed. Since exemptions to the FOIA are to be construed narrowly, *Consumers Union v. Heimann,* 191 U.S.App.D.C. at 10, 589 F.2d at 533, the Court finds that exemption eight of the FOIA does not apply to banks which are no longer in operation. Accordingly, the motion of the plaintiffs for summary judgment as to exemption eight will be granted, and the motion of the FDIC will be denied.

## III. EXEMPTION SEVEN DOES NOT APPLY TO THE CRIMINAL IRREGULARITY REPORT.

The FDIC has refused to release one document in reliance on exemption seven, which exempts from mandatory disclosure "investigatory records compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). A report of apparent criminal irregularity is furnished by the FDIC to the appropriate federal investigatory agency when the FDIC has reason to believe, as a result of its examination of a bank, that federal criminal laws have been violated. Miller Affidavit, ¶ 10(E). The document at issue under this exemption was furnished by the FDIC to the FBI. The FBI has informed the FDIC that release of the report would interfere with enforcement proceedings.

The threshold requirement for the application of exemption seven is that the record must have been compiled for law enforcement purposes. The plaintiffs correctly point out that to resolve disputes under exemption seven it is necessary to distinguish two types of documents: rou-

tine administration, surveillance or oversight of federal programs; and inquiries which focus with special intensity on specific alleged illegal acts and particular parties. *See Center for National Policy Review on Race and Urban Issues v. Weinberger,* 163 U.S.App.D.C. 368, 371, 502 F.2d 370, 373 (1974); *Rural Housing Alliance v. Department of Agriculture,* 162 U.S.App.D.C. 122, 130, 498 F.2d 73, 81 (1974). The report of apparent criminal irregularity contains information derived from FDIC bank examinations. The bank examination typifies routine oversight of a federal program. According to the FDIC, "(a) report of examination is the FDIC's primary tool for supervising the banks under its jurisdiction. The report is, basically, an evaluation of a given bank's financial soundness, its compliance with applicable laws and regulations, and the examiner's opinion as to whether a bank is engaged in unsafe or unsound banking practices." Defendant's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, or in the Alternative, to Dismiss, at 3–4 (January 31, 1979). Accordingly, the information in the examination report cannot be deemed "compiled for law enforcement purposes" within exemption seven.

■ The report of apparent criminal irregularity is no more than a compilation of the information in the examination report. Even if the report of apparent criminal irregularity itself is "compiled for law enforcement purposes," this fact alone could not transform this information into exempt matter. Unless the information was originally gathered for law enforcement purposes, the subsequent inclusion of the material in an investigative report does not affect its characterization under exemption seven. Any information which is later gathered for special scrutiny rather than routine regulation could still be exempt under exemption seven. *Center for National Policy Review on Race and Urban Issues v. Weinberger,* 163 U.S.App.D.C. at 372, 502 F.2d at 374. Accordingly, because the

FDIC has failed to show that the information in this document was compiled for law enforcement purposes, the plaintiffs' motion for summary judgment on this issue will be granted, and the FDIC's motion will be denied.

## IV. EXEMPTION SIX HAS BEEN PROPERLY INVOKED TO PROTECT FINANCIAL INFORMATION.

The FDIC has invoked exemption six which permits the withholding of:

personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(6). Exemption six has been invoked eighty-nine (89) times to protect such information as the identities of purchasers of banks, and the financial obligations of various borrowers.

The plaintiffs argue that exemption six is not available for financial records because exemption eight was designed to protect financial institutions. Further, the plaintiffs contend that financial information is conspicuous in its absence from the Court of Appeals' litany of personal information protected by the sixth exemption in *Rural Housing Alliance v. Department of Agriculture,* 162 U.S.App.D.C. at 126, 498 F.2d at 77.

■ The Court rejects the plaintiffs' contentions. First, exemption eight is not the exclusive exemption upon which financial institutions may rely. Nothing in the statute or legislative history suggests such a result. Second, the Court of Appeals in this Circuit has recognized that this exemption was intended "broadly to protect individuals from a wide range of embarrassing disclosures." *Ditlow v. Shultz,* 170 U.S. App.D.C. 352, 355, 517 F.2d 166, 169 (1975). Finally, financial information can certainly be "similar" to medical and personnel files as exemption six requires. *See Wine Hobby USA, Inc. v. Internal Revenue Service,* 502 F.2d 133, 135 (3d Cir. 1974). Other

cases have indicated that financial information can constitute a clearly unwarranted invasion of personal privacy. *See National Treasury Employees v. U. S. Department of the Treasury,* Civil Action No. 77–465 (D.D.C. August 29, 1978).

 In order to determine whether the release of particular information would constitute a clearly unwarranted invasion of privacy, it is necessary to balance the public interest in disclosure against the degree of privacy invasion. *See Department of Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). The release of personal information such as the size of one's loan, his assets, or the collateral put up for a loan would constitute a clearly unwarranted invasion of an individual's privacy. *See Consumers Union v. Heimann,* 191 U.S.App.D.C. at 11, n.12, 589 F.2d at 534 n.12 ("Indeed, there is some indication in the legislative history that Congress considered information concerning loans to be one of the more sensitive topics in an examination report.") (citation omitted).

Moreover, the plaintiffs have not offered any significant public interest justification to counterbalance this invasion of personal privacy. Accordingly, the motion of the FDIC for summary judgment shall be granted with regard to exemption six, and the motion of the plaintiffs will be denied.

## V. THE FIFTH EXEMPTION IS NOT AVAILABLE IF THE MATTER IS GATHERED AFTER THE AGENCY'S FINAL DECISION.

The fifth exemption to the FOIA provides that documents are exempt from mandatory disclosure if they are "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The FDIC relies on two privileges to support its contention that the documents are exempt from disclosure: the deliberative process privilege, and the attorney-client privilege.

 Exemption five protects the consultative function of government by protecting the confidentiality of "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Jordan v. Department of Justice,* 192 U.S.App.D.C. 144 at 163, 591 F.2d 753 at 772 (1978). In order to fall within the deliberative process privilege the documents must be "antecedent to the adoption of an agency policy." *Jordan v. Department of Justice, supra,* 192 U.S.App.D.C. at 165, 591 F.2d at 774. The only agency decision which the FDIC points to in its *Vaughn v. Rosen* affidavit is the decision to issue a notice of charges which occurred on July 14, 1977. However, the FDIC has withheld many documents generated after this date relying on the fifth exemption. The FDIC claims that these documents relate to many decisions, recommendations, and policies, and not just the July 14, 1977 decision to issue a notice of charges. The Court finds that the FDIC should be given a reasonable opportunity to relate each document claimed to be exempt under the fifth exemption to a contemplated agency decision; accordingly, the cross-motions will be denied without prejudice to renewal.

 The FDIC has withheld thirteen documents from the plaintiffs on the grounds that such documents fall within the attorney-client privilege. The plaintiffs claim that the FDIC has failed to show that the matter from the attorney to the client was based on confidential information. However, the Court finds, on the basis of the *Vaughn v. Rosen* affidavit, that the information, such as the strategy to be followed in an administrative hearing, is confidential. Accordingly, with regard to the documents withheld under the attorney-client privilege, the FDIC's motion for summary judgment shall be granted, and the plaintiffs' motion shall be denied.

An order in accordance with the memorandum opinion shall be issued of even date herewith.