CROWELL & MORING, Plaintiff,

v.

DEPARTMENT OF DEFENSE, et al., Defendants.

Civ. A. No. 87–3432.

United States District Court, District of Columbia.

Jan. 12, 1989.

As Changed Feb. 28, 1989.

---

Donald A. Flexner, Alan W.H. Gourley and Kent A. Gardiner of Crowell & Moring, Washington, D.C., for plaintiff.

Daniel Bensing, Asst. U.S. Atty., Washington, D.C. with whom Jay B. Stephens, U.S. Atty., and John D. Bates, Asst. U.S. Atty., were on brief, for defendants.

## INTRODUCTION

CHARLES R. RICHEY, District Judge.

This Freedom of Information Act ("FOIA") suit arises out of a FOIA request that plaintiff, a Washington, D.C. law firm, filed with the Defense Reutilization and Marketing Service ("DRMS"), a component of the Defense Logistics Agency ("DLA"), on behalf of one of its corporate clients. In its request, plaintiff asked the DRMS for solicitation and bidding records that it had concerning its sale of surplus explosives from January 1, 1983 to June 1, 1987.

DRMS provided plaintiff with those documents in its possession that were responsive to plaintiff's request; however, other responsive documents had been previously seized by the Defense Criminal Investigative Service ("DCIS") to assist it in its investigation of possible antitrust violations arising out of the sale of surplus explosives by DRMS. As such, DRMS forwarded plaintiff's FOIA request to the DCIS. The DCIS has released 211 of the 224 responsive documents in its possession to plaintiff; the thirteen remaining documents are the subject of this suit.

Two outstanding motions are now before the Court. The first is defendants' motion for summary judgment in which they claim the applicability of FOIA exemptions 7(A) (law enforcement proceedings) and 7(D) (confidential sources) to the thirteen withheld documents.[1] The other motion is one plaintiff filed pursuant to Fed.R.Crim.P. 6(e) to redact or to place under seal defendants' filings that identify plaintiff's client by name.

---

1. In the motion for summary judgment that defendants filed, they also asserted the applicability of Exemption 5 (internal communications) to the withheld documents. Subsequent to their filing of their motion for summary judgment, defendants withdrew their assertion of Exemption 5 at an oral hearing the Court held on September 29, 1988.

Upon consideration of these motions, the supporting and opposing legal memoranda, defendants' affidavits, oral arguments by counsel for both parties, and an *in camera* inspection of the withheld documents,[2] the Court concludes that defendants are properly withholding the documents at issue pursuant to Exemptions 7(A) and 7(D) and, therefore, will grant their motion for summary judgment. The Court also concludes that defendants' reference to plaintiff's client by name is inconsistent with one of the underlying purposes of Fed.R.Crim.P. 6(e) and will, therefore, grant plaintiff's motion to place under seal defendants' filings identifying plaintiff's client by name.

## BACKGROUND

Plaintiff wrote a letter to DRMS, dated June 19, 1987, seeking general information about DRMS' sale of surplus explosives and more detailed information concerning the bidding on a particular sale. Plaintiff sent DRMS another letter on July 21, 1988 supplementing its earlier request of June 19, 1987.

On July 9, 1987, plaintiff received some documents that were responsive to its request from the Defense Logistics Agency, a sub-agency of DRMS. At that time, plaintiff was advised that some of the documents responsive to its request had been "seized" by the Defense Criminal Investigative Service ("DCIS"), an investigative arm of the Department of Defense Inspector General, and that its FOIA request was forwarded to DCIS for its review.

DCIS had previously seized these documents to assist it in its investigation of possible antitrust violations arising out of DRMS' sale of surplus explosives from 1982 to 1987. DCIS began this investigation when an attorney at DRMS received information from a source indicating the possibility of certain criminal antitrust violations. After DRMS conducted a brief investigation of these allegations of criminal misconduct, DRMS referred the information that it obtained to DCIS for further investigation. Since June, 1987, a grand jury investigation of these allegations has been ongoing in Memphis, Tennessee.

Subsequent to its learning of the whereabouts of the documents it was seeking, plaintiff made numerous inquiries with the Department of Defense between August and December, 1987 concerning the status of its FOIA request. Because plaintiff became impatient with repeatedly being told that its request was being "processed," plaintiff filed this suit on December 17, 1987.

After plaintiff filed this suit, DCIS determined that it had seized from DRMS 224 documents that were responsive to plaintiff's request. Upon completion of its review of these documents, DCIS forwarded 211 of these documents to the headquarters of the Defense Logistics Agency which in turn released them to plaintiff on January 15, 1988. The thirteen documents that were not turned over to plaintiff were withheld in their entirety.

On January 19, 1988, defendants wrote a letter to plaintiff asking if it desired to enter a stipulation of dismissal in light of the supplemental releases that defendants had made subsequent to plaintiff's filing of this suit. Plaintiff declined defendants' invitation to dismiss its suit because it was convinced that the thirteen remaining documents were being improperly withheld. As such, defendants filed a *Vaughn* index and accompanying affidavits to justify its nondisclosure of the withheld documents as well as a motion for summary judgment.

## I.

## DEFENDANTS HAVE DEMONSTRATED THAT THE DOCUMENTS THEY ARE WITHHOLDING WERE COMPILED FOR LAW ENFORCEMENT PURPOSES AND, THEREFORE, HAVE SATISFIED EXEMPTION 7'S THRESHOLD REQUIREMENT.

■ Before considering whether defendants have met their burden of demonstrating the applicability of Exemptions 7(A) and 7(D) to the thirteen documents at issue,

---

**2.** At the oral request of both parties at the hearing the Court held on September 29, 1988, the Court reluctantly agreed to conduct an *in camera* inspection of the withheld documents.

the Court will note that it is fully aware of the factual dispute between the parties over the circumstances surrounding the creation of the withheld records. While plaintiff contends that DRMS created the records at issue during the course of its routine marketing functions[3], defendants maintain that no written records were made until the commencement of an actual investigation of criminal activity.[4] This factual dispute does not, however, defeat defendants' motion for summary judgment because, as the Court will explain below, a factual determination as to the circumstances surrounding the creation of the records is not *material* to a resolution of whether defendants have properly asserted Exemptions 7(A) and 7(D). *See* Fed.R. Civ.P. 56(c) (providing that movant in a motion for summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law") (emphasis added).

Defendants claim both Exemptions 7(A) and 7(D) for all of the withheld documents. "[J]udicial review of an asserted Exemption 7 privilege requires a two-part inquiry." *See Federal Bureau of Investigation v. Abramson,* 456 U.S. 615, 622, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982). At first, as a threshold matter, the Court must determine whether the agency has demonstrated that the withheld documents consist of "records or information compiled for law enforcement purposes...." 5 U.S.C. § 552(b)(7) (1982), *as amended by* Pub.L. No. 99–570, § 1802(a) (Oct. 27, 1986). If

the agency meets its burden on this threshold matter, the Court must then determine whether the agency demonstrated that the disclosure of the withheld documents might cause one of six specifically enumerated harms set forth in Exemption 7 of the FOIA. 5 U.S.C. § 552(b)(7)(A)–(F).

The undisputed record shows that the documents at issue are now part of an investigatory file in an ongoing criminal investigation. The bone of contention is over whether documents, not originally generated by the DCIS, can be considered "compiled for law enforcement purposes" upon becoming part of an investigative file put together by the DCIS in conjunction with a criminal investigation it is conducting. Plaintiff contends that it is necessary to examine the original purpose for which information or records are generated or created in determining the applicability of Exemption 7 *Plaintiff's Response to Defendant's Motion for Summary Judgment* at 8. In contrast, defendants assert that the Exemption's applicability hinges on the context in which the record or information is currently being used rather than the reason for which a particular record or piece of information was initially generated. *Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment* at 5. The parties' disagreement over the meaning of the phrase "compiled for law enforcement purposes" is not surprising considering the divergence of views amongst courts on this question.[5]

---

**3.** *See* Plaintiff's Response to Defendants' Motion for Summary Judgment at 6.

**4.** Defendants assert that over the past five years the Defense Logistics Agency ("DLA"), of which DRMS is a sub-agency, has taken active measures to heighten their employees awareness of fraud. *Neff Affidavit* (filed October 7, 1988) at ¶ 14. Defense Logistics personnel are expected to notify the Fraud Counsel at the DLA of any suspected instances of fraud, and Fraud Counsel then notifies the DCIS. *Id.* at ¶ 15. On September 9, 1986, Jacqueline Jacobs, a Sales Contracting Officer at DRMS, obtained information from a telephone caller suggesting criminal activity by a large corporation; Ms. Jacobs did not memorialize in writing the contents of the conversation. *Id.* at ¶ 16. The next day Ms. Jacobs advised Cynthia Emerson, a Fraud Counsel, of

her conversation of the day before. *Id.* at ¶ 17. Defendants assert that "[f]rom the very first allegation of criminal activity nothing about the information gathered, conversations documented, or evaluations prepared by Jacobs ... can be said to be the mere routine monitoring of a normal bid protest. The referral to the Fraud Counsel was the initial step in the process of compiling and evaluating information regarding allegations of criminal activity." *Id.*

**5.** *Compare New England Medical Center Hospital v. N.L.R.B.,* 548 F.2d 377, 386 (1st Cir.1976); *Gould v. General Services Administration,* 688 F.Supp. 689, 699 (D.D.C.1988); *Fedders Corporation v. Federal Trade Commission,* 494 F.Supp. 325, 328 (S.D.N.Y.), *aff'd,* 646 F.2d 560 (2nd Cir.1980) (holding it is the context in which the

The amendment that Congress made to Exemption 7 in 1974 is a useful starting point for the examination of this question because those cases supporting plaintiff's interpretation of Exemption 7 primarily base their construction of the phrase "compiled for law enforcement purposes" on their interpretation of this amendment. When first enacted, Exemption 7 protected from disclosure "investigative files compiled for law enforcement purposes." Congress initially enacted this exemption because it 'recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their case. Foremost among the purposes of this Exemption was to prevent "harm [to] the Government's case in court." ' *N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978) (quoting S.Rep. No. 813, 89th Cong., 1st Sess. (1965)).

In 1974, Congress amended the language of Exemption 7 so as to protect from disclosure "investigatory records" rather than "investigatory files compiled for law enforcement purposes." This amendment was not a response to dissatisfaction with Congress' initial purpose in enacting Exemption 7; Congress still agreed that Exemption 7's primary purpose was "to prevent harm to the Government's case in court by not allowing an opposing litigant

earlier or greater access to investigative files than he would otherwise have." *See House Committee on Government Operations and Senate Committee on the Judiciary, Freedom of Information Act Amendments of 1974 (P.L. 93–502) Source Book,* 94th Cong., 1st Sess at 332 (Joint Committee Print 1975) ("Source Book"). The 1974 amendment to Exemption 7 was instead a response to Congress' disillusionment with the District of Columbia Circuit's application of Exemption 7. In particular, Congress was referring to four cases decided by the D.C. Circuit that created "a stone wall" to disclosure because these cases only required an agency to demonstrate that the requested documents were contained in an investigatory file.[6] *Id.* These cases did not require an agency to show whether an investigation was in fact contemplated or whether the investigation contemplated was completed.

Congress substituted the word "records" for "files" to "make clear that the Exemption did not endlessly protect material simply because it was in an investigatory file." *Robbins,* 437 U.S. at 230, 98 S.Ct. at 2321. Instead of simply showing that the withheld document was part of an investigatory file, the agency now had an affirmative obligation to show that the disclosure of each individual document contained in an investigatory file could bring about one of the six harms enumerated in Exemption 7.

---

documents are currently being used rather than the purpose for which they were created that is pertinent in determining whether a record or information was compiled for law enforcement purposes) *with John Doe Corporation v. John Doe Agency,* 850 F.2d 105, 109 (2nd Cir.1988); *Hatcher v. United States,* 556 F.Supp. 331 (D.D. C.1982); *Gregory v. Federal Deposit Insurance Corp.,* 470 F.Supp. 1329, 1334 (D.D.C.1979) (holding that information must be gathered originally for a law enforcement purpose for it to be properly withheld pursuant to Exemption 7).

The Court is aware that it once before had the occasion to examine the meaning of the phrase "compiled for law enforcement purposes" in *Gregory v. Federal Deposit Insurance Corp.,* 470 F.Supp. 1329 (D.D.C.1979). Because of the divergence of opinions on this question, even amongst district court judges in this Circuit, the Court decided to reexamine this question more closely, this time paying particular attention to the legislative history of the 1974 amendment to

Exemption 7 because the language of the Exemption does not provide a clear answer. By replacing the word "files" for "records," it became unclear whether Congress now intended that the withheld documents be created or generated rather than compiled for law enforcement purposes as "records" are contemporaneous accounts of an event or incident. In contrast, files are compiled because they are "receptacles" for papers or documents which are already in existence.

6. *See Center for National Policy on Race and Urban Issues v. Weinberger,* 502 F.2d 370 (D.C. Cir.1974), *Ditlow v. Brinegar,* 494 F.2d 1073 (D.C.Cir.), *cert. denied,* 419 U.S. 974, 95 S.Ct. 238, 42 L.Ed.2d 188 (1974); *Aspin v. United States Department of Defense,* 491 F.2d 24 (D.C. Cir.1973), *Weisberg v. United States,* 489 F.2d 1195 (1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974).

As Senator Hart, the sponsor of the 1974 amendment explained, "[o]ur amendment is broadly written, and when any one of the reasons for nondisclosure is met, the material will be unavailable. But the material cannot and ought not be exempt merely because it can be categorized as an investigatory record compiled for law enforcement purposes." *Source Book* at 333.

Several courts have interpreted the 1974 amendments as precluding the withholding of information originally created or generated in the course of routine business operations regardless of the current role that the information may play in a law enforcement proceeding and despite the agency's ability to demonstrate that the information's release could result in one of the harms enumerated in Exemption 7. The Second Circuit most recently articulated this position in *John Doe Corporation v. John Doe Agency*, 850 F.2d 105, 109 (2nd Cir.1988).[7] In *John Doe*, the Court explained that:

> The 1974 amendments to the FOIA make it clear that a governmental entity cannot withhold materials requested under the FOIA on the ground that the materials that were not investigatory records when compiled have since acquired investigative significance. Originally, the FOIA exemption in question applied to "investigatory files." In 1974, however, Congress substituted the word "records" for "files" to insure that documents produced in the routine course of government operations would not be withheld under subsection (b)(7) merely because they had been commingled with investi-

gative materials generated-later in the course of a law enforcement proceeding. *John Doe*, 850 F.2d at 109. *See also Hatcher v. United States*, 556 F.Supp. 331, 335 (D.D.C.1982) (explaining that materials generated in course of routine government operations can never be protected by Exemption 7); *Gregory v. Federal Deposit Insurance Corp.*, 470 F.Supp. 1329, 1334 (D.D.C.1979) (holding that information must be originally gathered for law enforcement purposes to be entitled to Exemption 7 protection).

The import of *John Doe* and the other cases that follow its reasoning is that the replacement of the word "files" with the word "records" adds an additional prerequisite to the application of Exemption 7—an examination of when and in what context records were originally created or generated.[8] This reading of Exemption 7 comports with neither the plain language of the exemption nor the purpose underlying its enactment.

The language of Exemption 7 does not provide that records or information must be originally created or generated for a law enforcement purpose in order to be withheld. Instead, the language of the Exemption allows the withholding of "records or information *compiled* for law enforcement purposes" (emphasis added). This is not a distinction without a difference; the definition of the verbs "to create" and "to generate" is very different than that of the verb "to compile." To create or to generate means "to bring into existence." *Webster's New Collegiate Dictionary* (1981). In contrast, "to compile" means "to collect

---

7. It is at least worth noting that in *John Doe*, the Court of Appeals for the Second Circuit makes no reference to *Fedders v. Federal Trade Commission*, 494 F.Supp. 325, 328, *aff'd*, 646 F.2d 560 (2nd Cir.1980), a Second Circuit case that is completely at odds with *John Doe*. In *Fedders*, the court held that unsolicited complaint letters received by the FTC prior to the contemplation of any investigation can be "compiled for law enforcement purposes" at a later date when an investigation by the FTC is actually contemplated.

8. Plaintiff contends that defendants would "have achieved the result [they] are seeking" if Congress had not replaced the word "files" with "records." *Plaintiff's Reply to Defendants' Reply*

at 4. If the Court understands plaintiff correctly, plaintiff is saying that the replacement of the word "files" with "records" converted the phase "compiled for law enforcement purposes" to "created or generated for law enforcement purposes." Such a conclusion is without base because the legislative history of the 1974 amendment to Exemption 7 is devoid of any evidence that Congress intended to alter the requirement that the withheld documents be "compiled for law enforcement purposes." If Congress intended the Exemption to cover only records created or generated for law enforcement purposes, Congress could have easily amended the language of Exemption 7 accordingly.

into a volume; to compose out of materials from other documents." *Id.* As such, the plain meaning of Exemption 7 is that records or information, initially created for a non-law enforcement purpose, can be withheld if put together or gathered from other sources for a law enforcement purpose.

Plaintiff maintains that such an interpretation of Exemption 7 would turn the clocks back to the days before the enactment of the 1974 amendment to Exemption 7; the Court disagrees. *Plaintiff's Reply to Defendant's Reply* at 3–4. Congress amended Exemption 7 in 1974 because it was concerned that records or information tucked away in investigative files would be withheld pursuant to Exemption 7 without requiring an agency to demonstrate that a particular document's disclosure could result in one of the harms enumerated in Exemption 7. The placement of a record or other information in a larger compilation of records or information gathered for a law enforcement purpose in no way precludes an agency from having to link the disclosure of each record or piece of information placed in the file to one of the six harms specified in Exemption 7.

To construe the 1974 amendments as infusing in Exemption 7 a requirement that a record be created initially for a law enforcement purpose may well lead to results inconsistent with the purpose of the 1974 amendment. It does not logically follow that records or information currently serve a law enforcement purpose simply because they had such a purpose at the time of their creation. To prevent a "stone wall" blocking disclosure, Congress amended Exemption 7 so as to require an agency to demonstrate that each record or piece of information within the file has a law enforcement purpose at the time the agency receives a FOIA request and that the disclosure of the record or piece of information could lead to one of the harms contemplated by Exemption 7.

Finally, but perhaps most importantly, reading into Exemption 7 a requirement that records or information be originally compiled for a law enforcement purpose could lead courts and agencies astray from Exemption 7's underlying purpose of "pre-vent[ing] harm to the Government's case in court by not allowing an opposing litigant earlier or greater access to investigative files than he would otherwise have." *Source Book* at 332. Although a record or piece of information may have been generated by a non-law enforcement agency for a non-law enforcement purpose, it does not necessarily follow that the record or piece of information cannot subsequently play an important role in a criminal investigation undertaken by a criminal law enforcement agency at a future date.

> Information drawn from a number of difference sources can be benign when separately considered. When combined, or "compiled for law enforcement purposes," however, these various pieces of information can indeed become accusatory in nature, these materials may qualify for Exemption 7 of FOIA if their release may interfere with an ongoing law enforcement investigation. Hence, even though the component derivative parts of a criminal investigatory file, when considered independently and without reference to the remainder of the material in the investigatory file, may not be covered by an exemption from FOIA, those materials, once combined and incorporated in a law enforcement "mosaic" may well be entitled to Exemption 7.

*Gould v. General Services Administration,* 688 F.Supp. 689, 698 (D.D.C.1988). Since it is undisputed that the DCIS placed the records at issue in a file it "compiled for law enforcement purposes" as part of its current investigation of suspected criminal misconduct by a corporation, the Court concludes that defendants have satisfied Exemption 7's threshold requirement that the withheld documents be "compiled for law enforcement purposes."

## DISCLOSURE OF THE WITHHELD DOCUMENTS COULD INTERFERE WITH A LAW ENFORCEMENT PROCEEDING AND, THEREFORE, DEFENDANTS ARE PROPERLY WITHHOLDING THEM PURSUANT TO EXEMPTION 7(A).

Although defendants have shown that the documents they are withholding were "compiled for law enforcement pur-

poses," this showing alone does not entitle them to withhold documents pursuant to Exemption 7(A). They must also demonstrate that the disclosure of the withheld documents "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). In addition, Exemption 7(A) requires defendants to demonstrate that the material being withheld 'relates to a "concrete prospective law enforcement proceeding." ' *Bevis v. Department of State*, 801 F.2d 1386, 1389 (D.C.Cir.1986) (quoting *Carson v. U.S. Department of Justice*, 631 F.2d 1008, 1018 (D.C.Cir.1980).

The records that plaintiff is seeking are currently playing a role in a concrete law enforcement proceeding; they are being used in conjunction with a grand jury investigation in Memphis, Tennessee which has been ongoing since June, 1987. *See Lutsch Declaration* at ¶ 12; *Neff Affidavit* (filed October 7, 1988) at ¶ 1. The target of the grand jury investigation is a corporation which may have violated federal antitrust and other criminal statutes in its purchase of surplus explosives from the DRMS. *See Neff Affidavit* (filed October 7, 1988) at ¶ 1. The fact that these records have or may be presented to the grand jury does not, however, automatically cloak them with a ' "veil of secrecy." ' *Senate of Puerto Rico v. U.S. Department of Justice*, 823 F.2d 574, 582 (D.C.Cir.1987) (quoting *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1382 (D.C.Cir.) (en banc), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). Defendants must also demonstrate that the disclosure of the documents would ' "tend to reveal some secret aspect of the grand jury's investigation" such as ... "the identities witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." ' *Id.*

After reviewing defendants' affidavits along with examining the withheld documents *in camera,* the Court concludes that the disclosure of the withheld documents would reveal the identities of potential key witnesses and would impair the grand jury's ability to obtain their continued cooperation. In an affidavit submitted by defendants, Walter Neff, a Special Agent for the DCIS, asserted that:

> A Crowell and Moring attorney representing the large corporation in the FOIA litigation is also representing the large corporation in matters relating to the criminal investigation. This attorney has contacted some of the potential witnesses in the pending criminal case. One of the individuals contacted by the large corporation's attorney subsequently telephoned me on September 29, 1988, and told me about his conversation with that attorney. This person told me he wished he had never gotten involved in this case or been helpful to me in the criminal investigation. He said he has seen some indications of possible criminal activity in another bid, but that he had not called me because he did not want to get involved any further. And he declined my request to furnish details about the other bid. A second potential witness who was contacted by the attorney, told me that while he does not intend to lie to me, he fully intends to cooperate with the large corporation. Furthermore, he plainly suggested that anything I told him would be repeated to the large corporation.

*Neff Affidavit* (filed October 7, 1988) at ¶ 32. Since the records defendants are withholding would reveal the identities of potential witnesses as well as their possible testimony, the disclosure of this case is likely to impede the Government's preparation of its case for presentation to the grand jury. Accordingly, the Court concludes that defendants are properly withholding the documents at issue pursuant to Exemption 7(A).

THE DOCUMENTS THAT DEFENDANTS ARE WITHHOLDING MAY ALSO BE WITHHELD PURSUANT TO EXEMPTION 7(D) BECAUSE THEY WERE COMPILED BY DCIS, A CRIMINAL LAW ENFORCEMENT AUTHORITY, IN THE COURSE OF A CRIMINAL INVESTIGATION AND THEIR DISCLOSURE COULD REVEAL INFORMATION PROVIDED BY A CONFIDENTIAL SOURCE.

Defendants have also claimed the applicability of Exemption 7(D) to the same doc-

uments that they are withholding pursuant to Exemption 7(A). Exemption 7(D) protects from disclosure law enforcement records or information when their release:

> could reasonably be expected to disclose (1) the identity of a confidential source, ... and, (2) in the case of records or information compiled by a criminal law enforcement authority in the course of a criminal investigation ... information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). Since the DCIS is a criminal law enforcement agency, the Court must 'focus on the second clause, which requires the government to prove that the information sought was (1) compiled in the course of a qualifying "investigation" and (2) "furnished only by the confidential source." ' *Keys v. U.S. Department of Justice*, 830 F.2d 337, 343 (D.C.Cir. 1987).

Prior to the FOIA's amendment in 1986, a qualifying investigation was a threshold requirement for all of the subparts to Exemption 7; now it only remains a "predicate of exemption under the second clause of paragraph (D)." *Id.* In order to satisfy this "predicate," defendants 'must "identify (1) a particular individual or a particular incident as the object of its investigation and (2) the connection between the individual or incident and a possible security risk or violation of federal law." ' *Id.* (quoting *Pratt v. Webster*, 673 F.2d 408, 420 (D.C.Cir.1982)).

The Court has already determined above that the DCIS' compilation of the records at issue was for a law enforcement purpose. Defendants compiled the records because of suspected violations of antitrust and other federal criminal statutes. To prove the existence of a qualifying investigation, all that remains for defendants to show is that 'the gathering of the information [plaintiff is seeking] focused on a "particular individual or a particular incident as the object," *Pratt*, 673 F.2d at 420, as opposed to "routine" matters that are "ancillary to an [agency's adminsitrative] task." ' *Keys*, 830 F.2d at 344 (quoting *National Policy Review on Race and Ur-*

*ban Issues v. Weinberger*, 502 F.2d 370, 373 (D.C.Cir.1974). From reviewing defendants' affidavits and inspecting the withheld documents *in camera*, the Court concludes that the DCIS compiled the records at issue to assist it in its investigation of suspected criminal misconduct by a particular corporation in its purchase of surplus explosives from DRMS. As such, defendants have satisfied Exemption 7(D)'s threshold requirement of a qualifying investigation.

Through their submission of affidavits and their production of the withheld documents for *in camera* review, defendants have also demonstrated that the withheld documents are source-revealing. In particular, the withheld documents reveal the identities of small corporations which furnished the DRMS with information concerning possible misconduct by one of their largest competitors. These documents consist of letters and records of telephone conversations to the DRMS from these small corporations.

The only inquiry that remains is whether these sources received either express or implied assurances of confidentiality. *See, e.g., Keys*, 830 F.2d at 345. Plaintiff maintains that assurances of confidentiality, whether express or implied, are improbable considering the fact that the information being withheld was unsolicited. *Plaintiff's Reply to Defendants' Motion for Summary Judgment* at 17. The Court disagrees with plaintiff's conclusion. 'Although an assurance may not be as readily inferred when the information is volunteered, the nature of the information and the context in which it was provided [may make] "it unlikely that [the informants] would have made [such] ... allegations had they thought the [DRMS] would not keep them in the strictest confidence." *Id.* at 346 n. 9 (quoting *Brant Construction Co. v. E.P.A.*, 778 F.2d 1258, 1263–65 (7th Cir. 1985)).

Although defendants' affidavits indicate that at least one source received an express assurance of confidentiality,[9] defendants'

---

9. *See Neff Affidavit* (filed October 7, 1988) at ¶ 26.

affidavits and *Vaughn* index are infirm because they fail to link this express assurance of confidentiality to particular documents. This defect is not, however, fatal because the Court finds that the small corporations reporting possible criminal misconduct received implied assurances of confidentiality because it is "reasonable to infer" that these small corporations would not have provided the DRMS with this information absent such assurances. *See Keys*, 830 F.2d at 343.[10]

A review of defendants' affidavits along with an *in camera* inspection of the withheld documents reveal that the small corporations providing DRMS with information were concerned that their complaints could result in their being subjected to harassment and, perhaps, retaliation. In fact, from its *in camera* inspection, the Court learned that some small corporations refused to file written complaints for fear that they would be antagonized. In addition, the refusal of at least one source to continue its cooperation with the DCIS after counsel for the large corporation contacted the source upon learning of the source's identity [11] implicitly suggests that the source intended that its identity be kept confidential. Because the Court concludes that the information that plaintiff is seeking was obtained from sources who received at least implied assurances of confidentiality, defendants are entitled to withhold the information at issue pursuant to Exemption 7(D) as well as Exemption 7(A).

## II.

## THE COURT WILL GRANT PLAINTIFF'S MOTION TO PLACE UNDER SEAL DEFENDANTS' FILINGS IDENTIFYING PLAINTIFF'S CLIENT BY NAME BECAUSE SUCH REFERENCE TO PLAINTIFF'S CLIENT IS INCONSISTENT WITH ONE OF FED.R.CRIM.P. 6(E)'S UNDERLYING PURPOSES.

Finally, plaintiff has asked the Court either to redact or to place under seal all of defendants' filings that identify its client by name.[12] Plaintiff bases its motion on Fed.R.Crim.P. 6(e) which establishes a general rule of secrecy for "matters occurring before the grand jury." Defendants contend that Rule 6(e) is inapplicable because the Rule does not prohibit the disclosure of the "mere fact that [plaintiff's client] is under grand jury investigation ... particularly where it is made to counsel for [the target] and to the Court in the context of defending against a civil case brought by counsel for [the target]." *Defendants' Opposition to Plaintiff's Motion to Seal or Redact* at 2.

Defendants read the language to Rule 6(e) too literally and, as such, lose sight of the Rule's intended purpose. Underlying Rule 6(e)'s general rule of secrecy is an intent "to assure that persons who are accused but exonerated will not be held up to public ridicule." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219, 99 S.Ct. 1667, 1673, 60 L.Ed.2d 156 (1979). This does not mean that disclosure of a grand jury target will never be in the public interest. Defendants have not, how-

---

**10.** This conclusion is not changed by the fact that the DRMS is not a criminal law enforcement agency. According to one of the affidavits defendants filed:

> Often, a potential source will provide information or complaints of alleged criminal activity to Government personnel who are not DCIS employees. This sometimes occurs because persons outside the Government as well as some Government personnel do not know that DCIS exists. They do not know how or to whom to report a crime and still keep the alleged perpetrator from learning their identities. Sometimes individuals call local police departments, the Federal Bureau of Investigation or Assistant United States Attorneys; oth-

er times they call other Government personnel with whom they have had past dealings. Government personnel who receive complaints or information that allege fraud or other criminal activity often convey them to DCIS criminal investigators through their superiors or Fraud Counsels.

*Neff Affidavit* (filed October 7, 1988) at ¶ 8.

**11.** *See Neff Affidavit* (filed October 7, 1988) at ¶ 32.

**12.** *See Motion to Seal or Redact Pleadings and Other Documents Based Upon a Violation of Fed.R.Crim.P. 6(e).*

**1014**

ever, demonstrated that such disclosure will be in the public interest in this case. Moreover, the identity of plaintiff's client is irrelevant to the issues raised in this suit. Accordingly, the Court will grant plaintiff's motion to place under seal defendants' filings that identify plaintiff's client by name.

The Court will issue an Order of even date herewith memorializing these findings.